OPINION
{¶ 1} Appellant, the state of Ohio, appeals the judgment entered by the Ashtabula County Court of Common Pleas. The trial court dismissed a total of 50 counts against appellee, Daniel Brady, Sr. ("Brady").
 {¶ 2} Brady was indicted on 17 counts of pandering obscenity involving a minor, fourth-degree felonies, in violation of R.C. 2907.321; 17 counts of pandering obscenity *Page 2 
involving a minor, second-degree felonies, in violation of R.C.2907.321; 16 counts of pandering sexually oriented material involving a minor, second-degree felonies, in violation of 2907.322; and five counts of gross sexual imposition, third-degree felonies, in violation of R.C.2907.05. Brady pled not guilty to all the counts against him.
 {¶ 3} Upon Brady's motion, the trial court bifurcated the five gross sexual imposition charges from the remaining counts. The gross sexual imposition charges were tried separately and are not at issue in this appeal.
 {¶ 4} The trial court appointed Dean Boland to serve as an expert witness for Brady. Boland runs a consulting company. One of his specialties is the analysis of computer images. Boland has testified as an expert witness for defendants charged with possession of computer pornography in state and federal courts. Boland is also a licensed attorney and is Brady's appellate counsel in this appeal. Boland did not serve as Brady's counsel at the trial court level.
 {¶ 5} Boland's testimony was necessary in light of the United States Supreme Court's decision in Ashcroft v. The Free Speech Coalition.[1]
In Ashcroft v. The Free Speech Coalition, the United States Supreme Court held that virtual child pornography was protected speech under theFirst Amendment to the United States Constitution and, thus, could not be banned by child-pornography statutes.[2] Boland's expert assistance essentially entailed two functions. First, he would review the state's exhibits to determine whether they were virtual images or if they contained real children. Second, through the introduction of other exhibits, he would attempt to demonstrate the *Page 3 
difficulty of distinguishing between actual and virtual child pornography.
 {¶ 6} The same day the trial court appointed Boland as an expert, it issued a protective order regarding potential evidence. Specifically, the protective order provided:
 {¶ 7} "A compact disc has been provided (or will be provided) by the State of Ohio to counsel for defendant, David W. PerDue, of evidentiary matter containing possible contraband in the nature of child pornography.
 {¶ 8} "Defense counsel has a right and duty not only to review the images on the disc, but also to provide those images to imaging experts for purposes of examination and possible preparation of testimony pertaining to those images.
 {¶ 9} "It is necessary to transport this compact disc to allow counsel for the defendant to render effective assistance of counsel to his client and that counsel for the defendant, counsel for the State of Ohio, as well as anticipated expert witnesses, including Dean Boland [address and phone number deleted] are hereby authorized to possess this compact disc for this purpose.
 {¶ 10} "Defense counsel is authorized to transport this compact disc to Dean Boland for purposes of providing legal representation to their client.
 {¶ 11} "Dean Boland is hereby authorized to possess this compact disc to perform the necessary examination on this compact disc for purposes of possible evidentiary use."
 {¶ 12} Boland interpreted this protective order as giving him permission to view and possess the potentially illegal material with immunity from prosecution. His belief was based on the language in Ohio's obscenity statutes that permits possession of *Page 4 
certain otherwise illegal material if it is used for a "proper purpose" by a "prosecutor, judge, or other person having a proper interest in the material."[3]
 {¶ 13} In June 2005, the state provided the evidentiary disc to Boland. In addition, the state sent similar materials to its expert witness, Dr. Hany Farid.
 {¶ 14} On June 24, 2005, the Federal Bureau of Investigation ("FBI") executed a search warrant on Boland's residence. The FBI seized Boland's computer and several compact discs. Included in the seized material was computer equipment containing potential exhibits Boland had created for trial and the compact disc containing the images at issue in this matter. An affidavit submitted in support of the search warrant alleged Boland violated Section 2252A, Title 18, U.S. Code. This federal statute does not contain the exemption for a "proper person" using the material for a bona fide purpose similar to the exemptions contained in the Ohio statutes.
 {¶ 15} A hearing was held before the trial court on October 14, 2005. At the time of the hearing, Boland still faced potential indictment stemming from the execution of the June 2005 search warrant. Boland testified that, upon the advice of his counsel, he would not accept another copy of the prospective exhibits containing the allegedly illegal images in this matter. At the conclusion of this hearing, Brady orally moved to dismiss the indictment.
 {¶ 16} Following the hearing, Brady filed a written motion to dismiss the indictment. The state filed a brief in opposition to Brady's motion to dismiss the indictment. Attached to the state's motion was a copy of the search warrant affidavit. *Page 5 
 {¶ 17} The trial court granted Brady's motion to dismiss and dismissed all 50 counts of the indictment related to pornography.
 {¶ 18} The state has timely appealed the trial court's decision pursuant to R.C. 2945.67.[4] The state raises two assignments of error. Its first assignment of error is:
 {¶ 19} "The trial court erred in granting appellee's motion to dismiss, where it was based on facts that went beyond the face of the indictment."
 {¶ 20} Brady's motion to dismiss was permitted by Crim.R. 12, which provides, in part:
 {¶ 21} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue."
 {¶ 22} In his motion to dismiss, Brady was arguing that his due process right to a fair trial was violated. His contention was that, due to circumstances beyond his control, namely the federal criminal matter against Boland, he was denied the assistance of an expert witness.
 {¶ 23} The United States Supreme Court has held:
 {¶ 24} "[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on theFourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where * * * a defendant is denied the *Page 6 
opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."[5]
 {¶ 25} In Ake v. Oklahoma, the Supreme Court recognized the fundamental right to expert witnesses in certain cases.[6] In following Ake v. Oklahoma, the Supreme Court of Ohio has held that when an indigent criminal defendant makes a sufficient showing that an expert is necessary, the Due Process Clause, as set forth in the Fifth andFourteenth Amendments to the United States Constitution, requires the appointment of an expert witness to aid in the defense.[7]
 {¶ 26} The state argues Brady's motion to dismiss was premature in that it challenged the sufficiency of the indictment. We agree that "a pretrial motion [to dismiss] must not entail a determination of the sufficiency of the evidence to support the indictment."[8] However, in this matter, Brady was not challenging the sufficiency of the potential evidence to support the charges in the indictment. Rather, he was making a constitutional challenge, arguing his right to a fair trial was compromised due to the FBI's actions against Boland.
 {¶ 27} Brady's motion to dismiss did not implicate any trial issues; thus, it was capable of determination prior to trial pursuant to Crim.R. 12.
 {¶ 28} The state's first assignment of error is without merit. *Page 7 
 {¶ 29} The state's second assignment of error is:
 {¶ 30} "The trial court erred in granting appellee's motion to dismiss where appellee claims he cannot receive a fair trial due to limitations placed upon appellee's expert witness."
 {¶ 31} This court uses a de novo standard of review when reviewing a trial court's decision regarding a motion to dismiss.[9]
 {¶ 32} "Pursuant to Ake, it is appropriate to consider three factors in determining whether the provision of an expert witness is required: (1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."[10]
 {¶ 33} Presumably, the trial court considered these factors. Thereafter, the trial court determined an expert witness was necessary in this matter to ensure Brady's due process right to a fair trial. Such decision is left to the sound discretion of the trial court.[11] On appeal, the state does not contest the trial court's decision that Brady was entitled to the services of an expert.
 {¶ 34} Boland testified that, upon the advice of counsel and due to the threat of additional federal prosecution, he could not possess another copy of a compact disc containing the allegedly illegal images in this matter. Further, he testified he could not conduct a proper investigation of any websites from which the images might have *Page 8 
allegedly originated. Finally, he could not use his expertise to create potential exhibits for Brady's trial.
 {¶ 35} Not only was Brady denied the expert services of Boland, he was denied the expert services of all potential experts. Boland testified that no other expert witness would risk federal prosecution to assist Brady. Further, Boland testified that, in his opinion, Brady's counsel was duty-bound to inform potential experts about the possibility of federal prosecution. In light of this requirement, it would be nearly impossible to find a competent expert.
 {¶ 36} The state asserts Brady was not prejudiced because Boland's creation of certain images involved "morphing." Morphing is the practice of altering innocent pictures of real children to make the children appear to be engaged in sexual conduct.[12] The affidavit described certain images that were allegedly in Boland's possession. The state contends these images violated R.C. 2907.323(A). A specific "morphed" image may or may not violate R.C. 2907.323(A), depending on a legal and factual conclusion of whether the particular image shows a minor "in a state of nudity." We decline to engage in an analysis of this issue at this time. There is no evidence in the record regarding these specific images. Since no actual images were introduced, we cannot conclude that Boland's alleged production of these images violated R.C. 2907.323. On a similar point, we note the state gleans all of its factual references from the search warrant affidavit. This affidavit, like many affidavits submitted in support of a search warrant, contains significant hearsay information.[13] Moreover, the sole purpose of the *Page 9 
affidavit was to provide the magistrate with sufficient probable cause to issue the search warrant.[14] Finally, there is no evidence as to what the FBI agents actually found during the search of Boland's residence and person.
 {¶ 37} At the hearing, it was suggested that Boland could review the materials at issue in Brady's case at the prosecutor's office. This suggested solution would still not permit Boland to create exhibits for trial. Additionally, Boland testified that he uses certain software in his analysis that the prosecutor's office does not have. Also, even though he would be in the prosecutor's office, it could be argued that he "received," albeit temporarily, child pornography in violation of Sections 2252(a)(2)(A) and/or 2252A(a)(2), Title 18, U.S. Code. Another of Boland's concerns was visiting websites where the allegedly illegal images may have originated. He believed he could still be subject to federal prosecution for conducting illegal internet activity at the prosecutor's office. This belief was legitimate in that Sections 2252(a)(2)(A) and 2252A(a)(2), Title 18, U.S. Code prohibit receiving any images of child pornography that have traveled in interstate or foreign commerce, "including by computer." Finally, Boland testified regarding his concern that he would not be able to record any of his work at the prosecutor's office for fear of federal prosecution, therefore, he would have to memorize his entire analysis of possibly hundreds of images for his trial testimony. Upon consideration of Boland's testimony, the trial court concluded that viewing the images at the prosecutor's office was not a viable solution. We agree. *Page 10 
 {¶ 38} What occurred in this case was obviously troubling to the trial court. It would be akin to the following hypothetic situation, where a defendant is charged with possession of cocaine. The defendant contends the substance in question is baking soda. Pursuant to R.C. 2925.51(E), the defendant seeks to have an independent analysis of the substance. When the defendant's expert laboratory analyst receives the substance, the FBI seizes the substance and threatens to indict the analyst on federal narcotics charges. Obviously, that analyst is not going to want to receive another sample of the purportedly illegal substance and risk further prosecution. Moreover, in light of these circumstances, it is extremely doubtful that another analyst would risk federal prosecution and prison time for the purpose of assisting the defendant. Thus, the defendant is left without his constitutional right to the assistance of an expert to defend against the charges.
 {¶ 39} In this matter, Brady had a constitutional right to an expert witness. Due to circumstances beyond his or the trial court's control, Brady was denied the assistance of an expert witness. Without the services of an expert witness, there was no way to provide Brady a fair trial. Accordingly, the trial court did not err when it dismissed the charges against Brady.
 {¶ 40} We recognize there are a limited number of instances where it will be possible to determine that a defendant cannot have a fair trial prior to the trial itself. However, the unique circumstances of this case qualify this matter as one of those instances. *Page 11 
 {¶ 41} The state's second assignment of error is without merit.
 {¶ 42} The judgment of the trial court is affirmed.
COLLEEN MARY OTOOLE, J., concurs,
[1] Ashcroft v. The Free Speech Coalition (2002), 535 U.S. 234.
[2] Id. at 256.
[3] See R.C. 2907.32(B); R.C. 2907.321(B)(1); R.C. 2907.322(B)(1); and2907.323(A)(3)(a).
[4] See, also, State v. Hayes (1986), 25 Ohio St.3d 173, 174-175.
[5] Ake v. Oklahoma (1985), 470 U.S. 68, 76.
[6] Id. at 80-82.
[7] State v. Mason (1998), 82 Ohio St.3d 144, 150.
[8] State v. Riley (Dec. 31, 2001), 12th Dist. No. CA2001-04-095, 2001 Ohio App. LEXIS 5999, at *5, citing State v. O'Neal (1996),114 Ohio App.3d 335, 336.
[9] (Citations omitted.) State v. Palivoda, 11th Dist. No. 2006-A-0019, 2006-Ohio-6494, at ¶ 4.
[10] State v. Mason, 82 Ohio St.3d at 149, citing Ake v.Oklahoma, 470 U.S. at 78-79.
[11] State v. Mason, 82 Ohio St.3d at 150.
[12] Ashcroft v. The Free Speech Coalition, 535 U.S. at 242.
[13] State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶ 33, quoting Illinois v. Gates (1983), 462 U.S. 213, 238.
[14] State v. Craig, at ¶ 33, quoting State v. George (1989),45 Ohio St.3d 325, paragraph two of the syllabus.
CYNTHIA WESTCOTT RICE, P.J., dissents with Dissenting Opinion.