THE STATE OF OHIO, APPELLANT, *v.* BRADY, APPELLEE.

[Cite as *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493.]

(No. 2007–0742—Submitted February 6, 2008—Decided September 11, 2008.)

O'DONNELL, J.

## I.  Introduction

{¶ 1} The state appeals from a decision of the Ashtabula County Court of Appeals affirming the trial court's dismissal of the state's case against Daniel Brady, which consisted of 50 counts of pandering obscenity and sexually oriented material involving a minor.

{¶ 2} Two issues are presented on this appeal:  whether a trial court may consider evidence beyond the face of the indictment in ruling upon a motion to dismiss an indictment and whether the federal child pornography statutes deprive a defendant of the right to expert assistance in a trial involving charges for pandering obscenity and sexually oriented material involving a minor.

{¶ 3} Crim.R. 12 permits a court to consider evidence beyond the face of an indictment when ruling on a pretrial motion to dismiss an indictment if the matter is capable of determination without trial of the general issue.  Moreover, the federal child pornography laws do not deprive a defendant charged with pandering obscenity and sexually oriented material involving a minor of the right to expert assistance or to a fair trial.  Thus, the trial court abused its discretion when it dismissed the indictment on that basis.  Therefore, we reverse the judgment of the court of appeals and remand this cause for further proceedings consistent with this opinion.

## II. Facts and Procedural History

{¶ 4} On September 17, 2004, the state indicted Daniel Brady on 34 counts of pandering obscenity involving a minor, 16 counts of pandering sexually oriented material involving a minor, and five counts of gross sexual imposition. The trial court bifurcated the case and dismissed three counts of gross sexual imposition, and the remaining counts of gross sexual imposition were tried to a jury, which returned a verdict finding Brady not guilty on both counts.

{¶ 5} Regarding the remaining 50 counts, the trial court appointed Dean Boland, an attorney, to serve as an expert to assist in the preparation of Brady's defense. Thereafter, on June 24, 2005, the Federal Bureau of Investigation executed a search warrant at Boland's home in connection with two unrelated child pornography cases—*State v. Sparks*, Summit Cty. Common Pleas No. CR 02–12–3669, and *United States v. Shreck*, N.D.Okla. No. 03–CR–43–H. In those cases, Boland had testified as an expert and allegedly prepared and displayed exhibits that depicted identifiable minors who appeared to be engaged in sexually explicit conduct. Among the items seized by the FBI were CDs containing copies of the state's evidence against Brady, Boland's laptop computer, and approximately 50 digital-image exhibits that Boland was preparing as exhibits for Brady's trial.

{¶ 6} At a subsequent hearing, Boland testified that he could no longer possess copies of the state's evidence, due to the threat of federal prosecution. He also claimed that he could not perform his duties as a defense expert by viewing the state's evidence at the prosecutor's office because, inter alia, he would have limited opportunity to view the images and would have to testify about them from memory, and he would not have the necessary software to perform his analysis. He further testified that he would be unable to investigate the origins of the state's evidence or to create trial exhibits for the defense. Boland also proffered that Brady would be unable to find any expert willing to analyze the state's evidence due to the risk of federal prosecution associated with the completion of these tasks.

{¶ 7} At the conclusion of that hearing, Brady moved to dismiss the indictment, claiming that he could not receive a fair trial without the benefit of expert testimony. In his subsequent written motion, Brady reiterated Boland's explanation for why an expert would be unable to adequately prepare for trial.

{¶ 8} Finding that the risk of federal prosecution of his expert deprived Brady of effective assistance of an expert witness and effective assistance of counsel, the trial court determined that Brady could not receive a fair trial, and it therefore granted Brady's motion to dismiss all the pandering charges pending against him.

{¶ 9} The state appealed that dismissal. The Court of Appeals for Ashtabula County concluded that because Brady's motion to dismiss challenged the constitu-

tionality of proceeding to trial in light of the FBI's actions against Boland, the trial court properly ruled on the Crim.R. 12 motion. *State v. Brady*, Ashtabula App. No. 2005–A–0085, 2007-Ohio-1779, 2007 WL 1113969, ¶ 26.

{¶ 10} Additionally, the appellate court determined that the trial court properly ruled that Brady had a right to the assistance of an expert. Because the federal child pornography statutes do not contain an exemption permitting a "proper person" to use the material for a bona fide purpose, as the Ohio statutes do, the appellate court agreed with the trial court's determination that no expert could assist Brady without becoming subject to federal child pornography charges. Therefore, the court concluded that the trial court did not err in dismissing the charges against Brady.

{¶ 11} This cause is now before the court upon the allowance of the state's discretionary appeal.

### III. Crim.R. 12(C) Motion to Dismiss

{¶ 12} In its first proposition of law, the state contends that Brady's motion to dismiss addressed the quality of the evidence that he would be able to present at trial in light of alleged federal statutory limitations placed upon his expert witness. Because Brady's motion dealt with facts that went beyond the face of the indictment and events that had not yet occurred, the state claims that the motion constituted a motion for summary judgment—a motion for which there is no provision in the Criminal Rules.

{¶ 13} In response, Brady indicates that Crim.R. 12(C) permits pretrial motions regarding "any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." He further indicates that the plain language of Crim.R. 12(F) permits the court to consider evidence beyond the four corners of the indictment, including "briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means."

{¶ 14} The state cites *State v. O'Neal* (1996), 114 Ohio App.3d 335, 336, 683 N.E.2d 105, quoting *State v. Patterson* (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165, for the proposition that " ' "[a] motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of the evidence that may be produced by either the state or the defendant." ' "

{¶ 15} We have examined *O'Neal* and *State v. Varner* (1991), 81 Ohio App.3d 85, 610 N.E.2d 476, which dealt with similar claims.

{¶ 16} In *O'Neal*, the trial court granted the defendant's pretrial motion to dismiss an indictment for possession of cocaine in violation of R.C. 2925.11(A) on the ground that the small amount of cocaine found on his person was insufficient as a matter of law to sustain the "knowingly" element of the possession charge. *O'Neal*, 114 Ohio App.3d at 336, 683 N.E.2d 105. In reviewing the judgment, the

appellate court stated: " 'The proper determination [for the trial court to make in reviewing the motion to dismiss the indictment] was whether the allegations contained in the indictment made out offenses under Ohio criminal law. If they did, it was premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges.' " Id., quoting *Patterson*, 63 Ohio App.3d at 95, 577 N.E.2d 1165. Because O'Neal's motion required consideration of the general issue at trial—whether O'Neal knowingly possessed the small amount of cocaine found on his person—the Montgomery County Court of Appeals determined that the pretrial dismissal of the indictment was improper.

{¶ 17} Similarly, in *Varner*, the Summit County Court of Appeals considered the dismissal of an indictment for failure to appear in violation of a recognizance bond. The motion to dismiss required the trial court to examine Varner's bond to determine whether it was a recognizance bond. The appellate court reversed the order granting dismissal, holding that "[t]he Ohio Rules of Criminal Procedure, * * * do not allow for 'summary judgment' on an indictment prior to trial." *Varner*, 81 Ohio App.3d at 86–87, 610 N.E.2d 476.

{¶ 18} *O'Neal* and *Varner* are distinguishable from the instant case, however, because they involved pretrial motions to dismiss that required consideration of the general issue for trial. Here, Brady's motion did not embrace what would be the general issue at trial. Instead, it alleged that the FBI's enforcement of federal child pornography laws against his expert compromised his constitutional right to a fair trial by restricting the expert's ability to perform tasks deemed necessary to Brady's defense. Because Brady's pretrial motion to dismiss did not require a determination of the general issue for trial, Crim.R. 12(C) allowed the trial court to consider it. Moreover, because Crim.R. 12(F) expressly permits a court to consider briefs, affidavits, the proffer of testimony, and other exhibits, the trial court could properly consider evidence beyond the face of the indictment in ruling on Brady's motion to dismiss. We now turn to the appellate court's decision affirming the trial court's dismissal of Brady's indictment.

## IV. Dismissal of the Indictment Against Brady

{¶ 19} The appellate court affirmed the trial court's dismissal of the charges against Brady on the grounds that Brady had a constitutional right to an expert, that the application of federal child pornography laws denied him the assistance of an expert, and that without the services of an expert, Brady could not receive a fair trial. *Brady* at ¶ 39.

{¶ 20} In its second proposition of law, the state contends that an expert is not necessary to defend the charges against Brady, because the expert's anticipated testimony and exhibits would not prove that the images of children at issue in this case are not images of real children. Brady, however, contends that the central issues of the case are the content and authenticity of the state's evidence—digital

images—rendering expert assistance on that issue constitutionally necessary. In order to address these arguments, we must first examine the right to expert assistance and the charges against Brady.

## A. Right to Expert Assistance

{¶ 21} In *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, the United States Supreme Court acknowledged that due process and fundamental fairness require the state to provide an indigent criminal defendant with "access to the raw materials integral to the building of an effective defense." *Ake*, 470 U.S. at 77, 105 S.Ct. 1087, 84 L.Ed.2d 53. As we stated in *State v. Mason* (1998), 82 Ohio St.3d 144, 149, 694 N.E.2d 932, "[w]hile *Ake* involved the provision of expert psychiatric assistance only, the case now is generally recognized to support the proposition that due process may require that a criminal defendant be provided other types of expert assistance when necessary to present an adequate defense."

{¶ 22} Pursuant to *Ake* and *Mason,* it is appropriate for a court to consider the following factors in determining whether the provision of an expert witness is necessary: "(1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided." *Mason,* 82 Ohio St.3d at 149, 694 N.E.2d 932, citing *Ake,* 470 U.S. at 78–79, 105 S.Ct. 1087, 84 L.Ed.2d 53. In the absence of a particularized showing of need, due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution does not require the provision of an expert witness. *Mason* at 150, 694 N.E.2d 932.

{¶ 23} The decision to grant or deny a defendant's request for an expert witness lies in the trial court's sound discretion. *Mason* at 150, 694 N.E.2d 932. We have defined "abuse of discretion" as an unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken. *State v. Cunningham,* 113 Ohio St.3d 108, 2007-Ohio-1245, 863 N.E.2d 120, ¶ 25.

## B. The Charges Against Brady

{¶ 24} In the present case, the grand jury indicted Brady on multiple counts of pandering obscenity involving a minor in violation of R.C. 2907.321, and pandering sexually oriented material involving a minor in violation of R.C. 2907.322.

{¶ 25} R.C. 2907.321(A), prohibiting pandering obscenity involving a minor, provides:

{¶ 26} "No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶ 27} " * * *

{¶ 28} "(5) Buy, procure, possess, or control any obscene material that has a minor as one of its participants."

{¶ 29} R.C. 2907.322(A), prohibiting pandering sexually oriented material involving a minor, provides:

{¶ 30} "No person, with knowledge of the character of the material or performance involved, shall do any of the following:

{¶ 31} "(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality."

{¶ 32} In *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113, the United States Supreme Court held that pornography depicting real children may be proscribed regardless of whether the images satisfy the test for obscenity set forth in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, based upon the state's compelling interest in protecting the children exploited in its production and in prosecuting persons who promote such sexual exploitation. *Ferber*, 458 U.S. at 758, 761, 102 S.Ct. 3348, 73 L.Ed.2d 1113. But pursuant to the United States Supreme Court's decision in *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, virtual child pornography that does not use any real children in its creation or production is a form of protected speech under the First Amendment. The constitutional status of innocent images of real children morphed to make it appear as though the children are engaged in sexual activity is uncertain under *Free Speech Coalition*. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 24. But the court has acknowledged that " '[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*.' " (Emphasis omitted.) Id. at ¶ 20, quoting *Free Speech Coalition*, 535 U.S. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403.

{¶ 33} Thus, in light of *Ferber* and *Free Speech Coalition*, an essential element of each of the charges against Brady that the state must prove beyond a reasonable doubt is that the children depicted in the subject images are real children.[1]

---

1. {¶ a} In response to the court's decision in *Free Speech Coalition*, Congress enacted Section 2252A(a)(3)(B) of Title 18, United States Code, which prohibits offers to provide and requests to obtain child pornography, but does not require the actual existence of child pornography.

{¶ 34} In *State v. Tooley*, we stated that despite advances in technology, " '[j]uries are still capable of distinguishing between real and virtual images.' " *Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, at ¶ 50, quoting *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132, 1142. We held that R.C. 2907.322(B)(3), which states, "In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor," is not overbroad but merely allows the state to prove its case with circumstantial evidence. *Tooley* at ¶ 2, 33. The inference permits, but does not require, a fact-finder to infer the age of the person depicted in an image. *Tooley* at ¶ 35. Thus, it is still the state's burden to prove beyond a reasonable doubt that the images depict real children. *Tooley* at ¶ 35. In *Tooley*, we also acknowledged the possibility that expert testimony might establish that "images of real children may be altered or 'morphed' without detection." *Tooley* at ¶ 27. Therefore, a defendant in this type of case may seek expert assistance in his defense.

### C. Perceived Limitations on Brady's Expert

{¶ 35} Brady maintains that the appellate court properly affirmed the dismissal of the charges against him on the ground that the threat of federal prosecution for the performance of tasks necessary to his defense, including viewing and analyzing the state's evidence, made it impossible for him to obtain a fair trial.

{¶ 36} Brady contends that the exceptions contained in R.C. 2907.321 and 2907.322, permitting certain persons to possess material that would otherwise constitute illegal child pornography, would apply to an expert in a criminal trial. But he claims that the federal statutes, namely Sections 2252(a)(2)(A) and 2252A(a)(2), Title 18, U.S.Code, contain no such exception and, therefore, expose an expert witness to federal prosecution for performing the very tasks necessary to aid the defense.

---

{¶ b} The United States Supreme Court upheld the constitutionality of Section 2252A(a)(3)(B) in *United States v. Williams* (2008), —— U.S. ——, 128 S.Ct. 1830, 170 L.Ed.2d 650, holding that it was neither overbroad under the First Amendment nor void for vagueness under the Due Process Clause. Id., —— U.S. ——, 128 S.Ct. at 1842, 1846, 170 L.Ed.2d 650. In his dissenting opinion, Justice Souter, joined by Justice Ginsburg, stated that the practical effect of the court's decision is to overrule its decisions in *Ferber* and *Free Speech Coalition* by permitting the government to prosecute defendants for merely proposing a child pornography transaction without requiring the government to prove that the subject images depict real children. However, because the majority expressly rejects the notion that its decision overrules *Ferber* and *Free Speech Coalition*, id., —— U.S. ——, 128 S.Ct. at 1844–1845, 170 L.Ed.2d 650, and because the charges against Brady involve the creation, reproduction, or publishing of the images themselves, *Williams* does not affect our analysis.

{¶ 37} Brady also asserts that the possibility of federal prosecution prevents any expert witness from even *viewing* the evidence against him, and he therefore claims that the threat of federal prosecution inhibits his ability to prepare exhibits to demonstrate that real child pornography and virtual child pornography are indistinguishable.

{¶ 38} The state did not challenge the request for the court to appoint an expert to aid in Brady's defense. But in response to Brady's motion to dismiss, it did challenge the probable value of the evidence that would result from the expert services that Brady claimed were necessary for his defense. These arguments emanate from the third prong of the test established in *Ake*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, and cited in *Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932—"the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided." *Mason* at 149, 694 N.E.2d 932.

{¶ 39} The appellate court affirmed the trial court's findings that Brady had a particularized need for an expert and that he could not receive effective assistance due to the expert's risk of federal prosecution. This risk allegedly arises from the fact that the federal statutes regarding child pornography do not provide an exception for expert witnesses. This position, however, is not well taken.

{¶ 40} Both R.C. 2907.321 and R.C. 2907.322, which prohibit the pandering of obscenity involving minors and sexually oriented material involving minors, contain the following exception: "This section does not apply to any material or performance that is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance." R.C. 2907.321(B)(1) and 2907.322(B)(1).

{¶ 41} The Child Pornography Prevention Act of 1996 ("CPPA"), Section 2251 et seq., Title 18, U.S.Code, contains no comparable exception. However, despite Brady's repeated assertions that his expert cannot even *view* the evidence against him without the risk of federal prosecution, Section 3509(m), Title 18, U.S.Code, contains a provision that permits an expert to view and analyze the government's evidence. It provides:

{¶ 42} "(1) In any criminal proceeding, any property or material that constitutes child pornography (as defined by section 2256 of this title) *shall remain* in the care, custody, and control of either the Government or the court.

{¶ 43} "(2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court *shall* deny, in *any criminal proceeding, any request by the*

*defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography* (as defined by section 2256 of this title), *so long as the Government makes the property or material reasonably available to the defendant.*

{¶ 44} "(B) For the purposes of subparagraph (A), property or material *shall be deemed to be reasonably available* to the defendant if the Government provides *ample opportunity for inspection, viewing, and examination at a Government facility* of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." (Emphasis added.)

{¶ 45} Section 3509(m) requires the material to remain in the care, custody, and control of the government. Furthermore, it mandates that the court deny any request to copy, photograph, or duplicate the material, provided the government gives a defendant and/or his representatives ample opportunity to inspect, view, and examine the material at a government facility.

{¶ 46} These restrictions are consistent with Crim.R. 16(E), which provides that upon a sufficient showing, a "court may at any time order that discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate" and further requires a court restricting such access to "specify the time, place and manner of making the discovery and inspection permitted." Crim.R. 16(E)(1) and (2). Courts routinely place restrictions upon access to evidence, particularly when that evidence consists of alleged contraband, e.g., controlled substances or counterfeit money.

{¶ 47} Boland objected to viewing the evidence in the prosecutor's office, asserting that he could not analyze all of the images in one sitting, did not believe that the state had the software he needed for his analysis, and would have to testify about the images from memory. However, at oral argument before this court, Boland, who also served as Brady's counsel on appeal, conceded that he could analyze the state's evidence at the prosecutor's office.

{¶ 48} Brady's argument that he would like his expert to create exhibits for use at trial is also not well taken. It is axiomatic that an expert's conduct must conform to the law. If in preparing for trial, Boland were to create images of real children engaging in sexually explicit conduct, or modify images of identifiable children to appear that they are engaging in sexually explicit conduct, his conduct would violate federal law. Section 2256(8)(A) & (C), Title 18, U.S.Code; *Free Speech Coalition,* 535 U.S. at 242, 122 S.Ct. 1389, 152 L.Ed.2d 403. This is no different from the practice of prohibiting experts in drug cases from manufacturing controlled substances or prohibiting experts in counterfeiting cases from printing counterfeit money. While an expert may view and analyze the state's evidence and offer an opinion as to its content (i.e., whether it is what the state

purports it to be), see Evid.R. 703, an expert may not violate the law when providing expert assistance to aid in defense of a case.

## V. Conclusion

{¶ 49} Because it is possible for Brady's expert to examine and analyze the state's evidence at the prosecutor's office or another government facility, the trial court abused its discretion in determining, *prior to trial*, that the lack of an exception for expert witnesses in the federal child pornography laws deprived Brady of the assistance of an expert and further deprived him of the ability to receive a fair trial. Accordingly, we reverse the decision of the court of appeals and remand the cause to the trial court for further proceedings.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

_____

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Shelley M. Pratt, Assistant Prosecuting Attorney, for appellant.

Dean Boland, for appellee.