[Cite as *State v. Ervin*, 2018-Ohio-3451.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA1 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| SHAWN E. ERVIN, | : | |
| Defendant-Appellant. | : | **RELEASED: 08/22/2018** |

<u>APPEARANCES</u>:

Eric J Allen, The Law Office of Eric J. Allen, Ltd., Gahanna, Ohio, for appellant.

Anneka Collins, Highland County Prosecuting Attorney, and James Roeder, Highland County Assistant Prosecuting Attorney, Hillsboro, Ohio, for appellee.

Harsha, J.

{¶1}    After a jury convicted Shawn Ervin of three felony counts of forgery, the Highland County Court of Common Pleas sentenced him to community control.  Ervin asserts that his convictions were against the manifest weight of the evidence.

{¶2}    However, the state's evidence showed beyond a reasonable doubt that Ervin created and filed a fictitious legal document in a Franklin County court proceeding. The evidence established he did so by copying authentic signatures of two people from a lease agreement and then used a laptop computer to merge those signatures onto a document purportedly issued by a non-existent lower court. We reject his first assignment of error.

{¶3}    Ervin also contends that the trial court abused its discretion by denying his oral request for expert assistance at state expense, and by denying him the opportunity to present a defense to the forgery charges.  We reject his contention because as his trial counsel appeared to concede, an expert would have only established that the

contested signatures were genuine, a fact that the state did not dispute. Instead, the state claimed that Ervin had taken the genuine signatures from a lease agreement and used a computer to place them on his fictitious "Review and Ruling" document before filing it with the Franklin County Court of Appeals. Ervin did not establish a reasonable probability that a handwriting expert would aid his defense. Therefore, the trial court did not abuse its discretion or deny him the opportunity to present a defense by rejecting his request for a handwriting expert at state expense. We overrule his assignments of error and affirm his convictions.

## I. FACTS

{¶4} The Highland County Grand Jury returned an indictment charging Shawn Ervin with two counts of forgery in violation of R.C. 2913.31(A)(2) and one count of forgery in violation of R.C. 2913.31(A)(3), felonies of the fifth degree. Upon Ervin's plea of not guilty, the court appointed an attorney to represent him.

{¶5} At the jury trial the state's evidence established that Shawn Ervin e-filed a document entitled "Motion to Accept Lower Court Ruling" in a civil appeal before the Franklin County Court of Appeals. He also e-filed another document entitled "Review and Ruling," which declared it was issued by the "Court of Leesburg." This document included a signature purporting to authorize the "[r]eview and rulings" by Christopher Runyon, and a notarization of Runyon's signature and signature by Alissa Teeters. There is no court in Leesburg.

{¶6} Ervin served copies of these documents on his ex-girlfriend, Kimberly Dunham, who was the opposing party in the civil custody case. She then contacted the Highland County Clerk's Office and sent it copies of the documents. Teeters, an

employee of the clerk's office, contacted the Highland County Sheriff's Office about the "Review and Ruling" that contained her notarization and signature.

{¶7}    Sgt. Daniel Croy, who investigated the matter, executed a search warrant of Ervin's home and seized his laptops, as well as the "Review and Ruling" document. Ervin admitted to Sgt. Croy that he created and e-filed the "Motion to Accept Lower Court Ruling" and "Review and Ruling" with the Tenth District Court of Appeals.  After Sgt. Croy asked Ervin to review the documents, Ervin told him, "I guess Chris is backing out now."

{¶8}    Both Runyon, a Leesburg Village Council Member, and Teeters testified although the "Review and Ruling" document appeared to contain their signatures, they never signed nor authorized their signatures on that document.  Instead, they remembered only signing a lease agreement with Ervin for Runyon's automotive garage in Leesburg.

{¶9}    Ian Wallace, a computer forensic specialist with the Ohio Bureau of Criminal Investigation, testified that he examined one of the laptops seized from Ervin's home and located a one-page document containing Runyon's signature, as well as Teeters's signature and notarization.

{¶10}  Ervin testified that he previously worked as a mechanic for Runyon and entered into a lease for his garage.  According to Ervin, Runyon gave him the "Review and Ruling" document to help him in his custody case.  Ervin admitted he created the "Motion to Accept Lower Court Ruling," and filed it along with the "Review and Ruling" in the Tenth District Court of Appeals.  Ervin claimed that although Runyon first provided him the "Review and Ruling," he had to redraft it because it was "childish,"

"unprofessional," and not in the right format.  Ervin testified that he did not actually see Runyon and Teeters sign the document, but that his signature was in blue ink and her signature was in blackish-gray ink.

**{¶11}**  On rebuttal Runyon denied preparing the "Review and Ruling" for Ervin or signing it.  And Sgt. Croy testified that the documents he seized from Ervin's home, which did not contain any color-ink signatures, were the original documents he seized.

**{¶12}**  The jury returned verdicts finding Ervin guilty of three counts of forgery: the first count by forging Runyon's signature on the "Review and Ruling" document, the second count by forging Teeters's signature on that document, and the third count by filing the document with the court of appeals.  The trial court sentenced Ervin to three years of community control.

## II. ASSIGNMENTS OF ERROR

**{¶13}**  Ervin assigns the following errors for our review:

I.  THE CONVICTION FOR FORGERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.  THE COURT ERRED WHEN IT DENIED FUNDING FOR A HANDWRITING EXPERT REQUESTED BY THE DEFENSE IN THIS MATTER IN VIOLATION OF THE HOLDING IN AKE V. OKLAHOMA AND THE GUARANTEES OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.

III.  APPELLANT WAS DENIED HIS ABILITY TO PRESENT A DEFENSE BY THE RULINGS OF THE TRIAL COURT.

## III. LAW AND ANALYSIS

### A.  Manifest Weight of the Evidence

**{¶14}**  In his first assignment of error Ervin asserts that his forgery convictions were against the manifest weight of the evidence.  In determining whether a criminal

conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. If the state presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 22 (4th Dist.) citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, (superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997)).

**{¶15}** Moreover, when reviewing the evidence under this standard, we are aware that the weight and credibility of the evidence are to be determined by the trier of fact; we thus defer to the trier of fact on these issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *Wootten* at ¶ 20. Thus the trier of fact is free is believe all, part, or none of any witness's testimony. *Id.* citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

**{¶16}** Ultimately, a reviewing court should find a trial court's decision is against the manifest weight of the evidence only in the exceptional case where the evidence

weighs heavily against the decision.  State v. *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 330.

{¶17}  The jury convicted Ervin of two counts of forgery in violation of R.C. 2913.31(A)(2), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed."  R.C. 2913.01(G) defines "forge" as "to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct."

{¶18}  The jury also convicted Ervin of one count of forgery in violation of R.C. 2913.31(A)(3), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged."  "Utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display."  R.C. 2913.01(G).

{¶19}  The state presented evidence that Ervin filed a document entitled "Review and Ruling" in a civil appeal in the Franklin County Court of Appeals.  That document purported to have been issued by a non-existent "Court of Leesburg" in Highland County, signed by Christopher Runyon, and notarized and signed by Alissa Teeters.  Sgt. Croy executed a search warrant of Ervin's home and seized the "Review and Ruling" document.  Ervin admitted filing the "Review and Ruling" document with the

Tenth District Court of Appeals.  Runyon and Teeters testified that although they had signed a lease agreement with Ervin, and it was indeed their signatures on the "Review and Ruling" document, they never signed that document.

{¶20}  Ervin argues that his forgery convictions were against the manifest weight of the evidence because "if someone cut and pasted a document from one document to another there would be evidence of that process on the computer" if he did it digitally, and there would be evidence of actual cutting and pasting if he did it physically. However, Ervin was in possession of a document that purported to contain signatures of Runyon and Teeters, but their uncontroverted testimony was that they did not sign the document.  Sgt. Croy found the document in Ervin's possession, and he admitted creating it and filing it with the court of appeals in a misguided attempt to bolster his appellate case.  The BCI forensic specialist found a digital one-page document containing just the signature of Runyon and the notarization and signature of Teeters on Ervin's laptop.

{¶21}  Based on this evidence the jury reasonably inferred that the state proved beyond a reasonable doubt that Ervin was guilty of the forgery offenses by creating the document, and transposing Runyon's and Teeters's signatures from his lease agreement to the false document, and then filing that document in his custody appeal. The jury did not lose its way in doing so.  Because his forgery convictions are not against the manifest weight of the evidence, we overrule Ervin's first assignment of error.

## B.  Request for Expert Assistance at State Expense
## and Opportunity to Present a Defense

{¶22}    In his second assignment of error Ervin contends that the trial court erred when it denied his request for state funding for a handwriting expert.  In his third assignment of error Ervin claims that by denying his request for a handwriting expert, the trial court denied him his opportunity to present a complete defense.  Because these assignments of error raise similar issues, we consider them jointly.

{¶23}  Under the due process guarantees of the United States Constitution and Ohio Constitution, an indigent criminal defendant may be entitled to funds necessary to obtain expert assistance at state expense.  However, this duty arises only where the trial court finds in the exercise of its sound discretion that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial.  *State v. Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932 (1998), syllabus; *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 221.

{¶24}  The trial court's decision on such a request is subject to reversal if the unsuccessful movant establishes the trial court abused its discretion.  *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.  An "abuse of discretion" is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken."  *Id.*

{¶25}  Likewise, the United States Constitution "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' "  *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 68, quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).  Although the right to present a defense is a fundamental element of due process, it is not unlimited.  *State v. Clay*, 4th

Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 32.  The evidence must be relevant, material, and vital to the defense.  *Id.* citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

{¶26}  We cannot conclude that the trial court abused its discretion in denying Ervin's oral request for a handwriting expert at state expense.  When Ervin's trial counsel made this request, he stated that he wanted the expert to compare Runyon's and Teeters's signatures on the "Ruling and Review" document with their actual signatures to determine if they signed the document:

> MR.KOOGLER:  * * * Because another issue that my client has raised with me, and we did discuss this early on, is that he believes, I think, that I should look at getting a handwriting expert in this particular matter.  I think we have… I don't think I agree with it in this particular case, because this is a situation that Ms. Teeters and Mr. Runyon are both denying that they signed the instrument that is purported to be the forged document, and so I think, you know, obviously would speak for themsel[ves].

> But as to credibility, my client is questioning the signatures that he has reviewed; and he thinks that having a handwriting analysis and comparing their actual signatures would be beneficial to his defense, Your Honor.

> THE COURT:  So in other words have somebody look at it and determine whether or not it is, in fact their signature[s] and their handwriting?

> MR. KOOGLER:  Yes, Your Honor.

{¶27}  The trial court initially appeared inclined to grant Ervin's motion and continue the trial, but the state then argued that a handwriting expert's testimony would not be beneficial because it agreed that Runyon's and Teeter's signatures were contained on the "Review and Ruling" document:

> MS. COLLINS:  I guess this was between Mr. Koogler and I, but I'm very confused as to what a handwriting expert is going to do, because there's no allegation that it's not their handwriting.  I can give you all a * * * of whose handwriting it is.

THE COURT:  All right.  Well then I'm confused. * * * Tell me what the State's position is as far as …

* * *

MS. COLLINS:  Count 1 and 2 both, the signature clearly is Mr. Runyon's, clearly Ms. Teeters.  * * * However, the document that the signature[s] have been placed on, you know, transposed to, is not the document that they signed.  They signed a different document.  That's the State's position.  And the Defendant took the signature page off of a different document, and attached it to this document, and sent it on to the Court of Appeals in Franklin County. * * * So I don't know what a handwriting expert is gonna do.

THE COURT:  Okay.  Stop right there.

MR. KOOGLER:  Well, the allegation, Your Honor, is essentially that a lease agreement that was executed that Ms.Teeters notarized and signed by Mr. Runyon, that that is what was utilized for purposes of the instrument in this case.  That's the allegation.  My client …

THE COURT:  It sounds like…I mean so it sounds to me like what they're saying is there has been some sort of a cut and paste job or…

MS. COLLINS:  Yes.

* * *

THE COURT:  …because I mean if they're saying it's their handwriting, what's the expert gonna say?

MR. KOOGLER:  And I understand that, but my client…his position has been this:  That Mr. Runyon did, in fact, sign the document, and that he believes Mr. Runyon or somebody else then stamped or utilized Ms. Teeters['s] signature.  And so he has been of the opinion that if they're denying…if he's denying that it's signed that somehow maybe an expert looking at it will be able to authenticate that it's his signature or not because Chris [Runyon] is denying that …

THE COURT:  Well, no, they're admitting that it's his signature, as I understand it * * * they're saying it's part of their case, yes, this is our signature, but it wasn't on this document.

MR. KOOGLER:  And I understand that, Your Honor.

THE COURT:  **So a handwriting expert's not gonna help you.**

MR. KOOGLER:  **I understand that**, but again…

THE COURT:  All right. Well, then I don't see any reason to continue on that basis.

**{¶28}**  Ervin's counsel effectively conceded that the handwriting expert would not help the defense because the state stipulated the signatures of Runyon and Teeters on the "Review and Ruling" document reflected their actual signatures.

**{¶29}**  Ervin had the burden to make a particularized showing that there existed a reasonable probability that the requested handwriting expert would aid his defense.   By acknowledging that the state's case did not rely on whether Runyon's and Teeters's signatures were authentic, Ervin conceded that the requested handwriting expert would not help his defense.

**{¶30}**  On appeal Ervin raises the argument that "[a]n expert, handwriting or otherwise, could have given testimony to the jury that this was an inked, authentic signature of the witness or it was a copy generated forgery."  (Ant. Brief, p. 7)  However, he did not make this argument at trial and has therefore forfeited it on appeal. *See generally State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (2014) (It is a well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be avoided or corrected by the trial court.' "); *State v. Awan,* 22 Ohio St.3d 120, 489 N.E.2d 277 (1986) (failure to raise an issue at the trial court level, which issue is apparent at the time of the proceeding, constitutes a waiver of such issue and a

deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal).

**{¶31}** Even if it had been raised, he states only a possibility that a handwriting or some other unknown expert would have helped his defense. "A defendant must show not just a mere possibility but a reasonable probability that an expert would aid in his defense." *Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 223. And as the state notes Sgt. Croy testified that the original document that he seized from Ervin's residence did not contain any inked, original signatures.

**{¶32}** Because Ervin failed to make the requisite particularized showing, the trial court did not abuse its sound discretion by denying his oral request for a handwriting expert at state expense. Moreover, because Ervin's trial counsel conceded that this evidence would not have been helpful given the nature of the state's case against him, he was not deprived of his opportunity to present a complete defense to the forgery charges. We overrule his second and third assignments of error.

### IV. CONCLUSION

**{¶33}** Ervin's forgery convictions were not against the manifest weight of the evidence; the trial court did not abuse its discretion by denying his request for a handwriting expert at state expense. Having overruled Ervin's assignments of error, we affirm his convictions.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**