[1] The recitation of facts and a portion of the discussion of appellant's assignments of error substantially overlaps with two companion cases (see State v. Hairston, Scioto App. No. 06CA3087 andState v. Hairston, Scioto App. No. 06CA3089).
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Marquis Hairston, defendant below and appellant herein, guilty of the following offenses: aggravated burglary in violation of R.C. 2911.11(A)(1); aggravated robbery in violation of R.C. 2911.01 (A)(1); attempt to commit aggravated murder in violation of R.C. 2923.02(A)/R.C. 2903.01; having a weapon under disability in violation of R.C. 2923.13(A)(3); two counts of kidnaping in *Page 2 
violation of R.C. 2905.01(B); gross sexual imposition in violation of R.C. 2907.05(A)(1); two counts of theft in violation of R.C.2913.02(A)(3); disrupting public services in violation of R.C.2909.04(A)(1); and burglary in violation of R.C. 2911.11(B)(1). Appellant was also found to have used a firearm in commission of these offenses.
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL ON THE CHARGE OF HAVING WEAPONS WHILE UNDER DISABILITY."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SEVER COUNTS ELEVEN AND TWELVE FROM THE INDICTMENT."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF PRIOR ACTS AT THE APPELLANT'S TRIAL WHEN THEY WERE MORE PREJUDICIAL THAN PROBATIVE."
 FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT VIOLATED THE APPELLANT'S GUARANTEE OF DUE PROCESS WHEN IT DENIED HIS MOTION FOR MISTRIAL."
 SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING *Page 3 
APPELLANT'S MOTION FOR MISTRIAL."
 {¶ 3} Ralph and Marcia Melcher own and operate Melcher Funeral Home at 1417 Offnere Street in Portsmouth. The Melchers live on the second floor, directly above the funeral home. In May 2004, a burglary occurred at the residence while the Melchers slept. Although the perpetrator(s) escaped, subsequent tests revealed Marquis Hairston's DNA on cigarette butts left at the premises.
 {¶ 4} On September 29, 2005, during the early morning hours, the Melchers awoke to find three men standing around their bed. The men ordered the couple to kneel as they searched for valuables. After ransacking the residence, the men ordered the Melchers to the living room, ordered them to remove their clothing and then tied them to chairs. One man groped Mrs. Melcher and indicated that a sexual assault was about to occur. This action prompted the couple to fight the intruders. Startled, two of the men fired their pistols at the Melchers and quickly fled the residence.
 {¶ 5} The couple managed to untie themselves and Marcia found the only working telephone in the residence to call 911. After emergency transport to the hospital, the Southern Ohio Medical Center (SOMC) staff determined that the couples' injuries were severe and that they should be stabilized and taken to Grant Medical Center in Columbus. Also, before leaving SOMC, catholic priests performed "last rites" on the couple. *Page 4 
 {¶ 6} Portsmouth police investigated the crime and followed several leads. Meanwhile, in the German Village area of Columbus a string of robberies had striking similarities to the Melcher incident. Robbery victims in those cases were forced to remove their clothing and were tied to chairs.
 {¶ 7} Marquis, Louis and Jovaughney Hairston were eventually arrested for the Columbus burglaries after stolen property was found in local pawn shops and traced to them. Marquis confessed to all three break-ins. Louis denied he had anything to do with the break-ins, but did admit he sold stolen property from those homes at various pawn shops. Jovaughney confessed to one Columbus burglary but not the other two.
 {¶ 8} In October 2005, a Portsmouth Police clerk was speaking on the telephone with an insurance adjuster when the clerk mentioned the Melcher robbery. The insurance adjuster mentioned the similarities to the German Village robberies. Around the same time, Portsmouth police received a "CODAS hit" that matched DNA taken from Marquis Hairston to the Melcher robbery DNA.[2]
 {¶ 9} On January 31, 2006, the Scioto County Grand Jury returned a twelve count indictment against appellant. The first ten counts related to the 2005 incident and included aggravated burglary, aggravated robbery, two counts of attempt to commit aggravated murder, having a weapon while under disability, two *Page 5 
counts of kidnaping, gross sexual imposition, theft, and disrupting public services. All counts carried a firearm specification. Appellant was also charged with two counts related to the 2004 Melcher break-in, including burglary and theft. Appellant pled not guilty to all charges.
 {¶ 10} At trial, the perpetrators' identification was the primary issue. Ralph and Marcia Melcher testified that the Hairstons broke into their home and terrorized them. They also admitted, however, that the perpetrators partially obscured their faces. Evidence also indicated that the Melchers had trouble identifying the Hairstons from a photographic lineup and that they first reported their attackers as either hispanic or African-American (the Hairstons are African-American). Marcia Melcher also conceded that her recollection was "foggy," except for her identification of the perpetrators.
 {¶ 11} In the end, the jury found the Melchers were credible and returned verdicts against all three Hairstons. The jury specifically found appellant guilty of all charges except for one count of attempt to commit aggravated murder. The jury also found that appellant committed these offenses with a firearm. The trial court sentenced appellant for the 2005 home-invasion as follows: nine years in prison for aggravated burglary; nine years for aggravated robbery; ten years for attempt to commit aggravated murder; three years for having a weapon under disability; seven years for each kidnaping charge; three years for gross sexual imposition; one year for theft and one year for *Page 6 
disruption of public services. The trial court also sentenced appellant to a mandatory three year sentence on the gun specification. With respect to the 2004 charges, the trial court sentenced appellant to serve seven years for burglary and one year for theft. Most of the sentences were ordered to be served consecutively so that appellant will be confined in prison for an aggregate total of fifty-nine (59) years. This appeal followed.
 I {¶ 12} We jointly consider appellant's first and second assignments of error because both concern his weapon while under disability conviction. Appellant asserts that insufficient evidence exists to support his conviction and that the trial court erred by not granting his Crim.R. 29(A) motion for judgment of acquittal. We disagree with appellant.
 {¶ 13} R.C. 2923.13 provides in part:
 "A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 1. * * * (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."[3] (Emphasis added.)
 {¶ 14} Appellant concedes the State's Exhibit 65 is a *Page 7 
certified copy of a Judgment Entry that shows a 1997 Franklin County Common Pleas Court conviction of "Marquis Hairston" for robbery with a firearm specification. Appellant does not contest that this is an "offense of violence" for purposes of R.C. 2923.13, but argues that no evidence establishes that he is, in fact, the same Marquis Hairston convicted in that case.
 {¶ 15} The judgment entry introduced as an exhibit at trial shows that appellant was sentenced to serve six to fifteen years in prison. Also, Ashley Arnett testified that she "met" appellant on an internet website (inmate.com) in 2002 and corresponded for a year until appellant's release from prison. Afterward, they saw each other periodically and eventually had a child together. Arnett's testimony provided a sufficient basis for a reasonable jury to conclude that appellant is the "Marquis Hairston" named in the judgment entry, especially in view of the fact that appellant does not have a common name and no real question regarding appellant's identity was raised at trial.
 {¶ 16} In a sufficiency of evidence review, courts look to the adequacy of evidence. In other words, courts must determine whether the evidence, if believed, supports a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. An appellate court's standard of review with sufficiency of evidence claims is whether, after reviewing the evidence and all inferences reasonably drawn therefrom in a light most favorable to the *Page 8 
prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. State v.Hancock, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶ 34;State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300. The same standard is used when reviewing a trial court's disposition of a Crim.R. 29(A) motion for judgment of acquittal. See e.g. State v. Brooker, Washington App. No. 06CA19, 2007-Ohio-588, at ¶ 8; State v. Knipp, Vinton App. No. 06CA641, 2006-Ohio-4704, at ¶ 11.
 {¶ 17} Again, we believe that Arnett's testimony, coupled with appellant's unusual name and the absence of a genuine question as to his identity, provided sufficient evidence for the jury to conclude that appellant and the "Marquis Hairston" who is the subject of the 1997 judgment entry are indeed the same person.
 {¶ 18} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first and second assignments of error.
 II {¶ 19} In his third assignment of error appellant asserts that the trial court erred by denying his pre-trial motion to sever the counts related to the 2004 break-in and try them separately from the ten counts related to the 2005 home-invasion.
 {¶ 20} Initially, we note that Ohio law favors joining multiple offenses in a single trial if the offenses are of the same or similar character. See Crim.R. 8(A); State v. Franklin *Page 9 
(1991), 62 Ohio St.3d 118, 122, 580 N.E.2d 1; State v. Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. Pursuant to Civ.R. 14, however, an accused may request to sever the charges upon a showing of prejudice.State v. Wiles (1991), 59 Ohio St.3d 71, 76, 571 N.E.2d 97; also seeState v. Taylor, Athens App. No. 04CA32, 2005-Ohio-3721, at ¶ 30. When a defendant claims that the joinder of multiple offenses prejudiced him, a trial court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. State v.Schaim (1992) 65 Ohio St.3d 51, 59, 600 N.E.2d 661.
 {¶ 21} Appellant argues that joinder in this case prejudiced him because "evidence from neither set of offenses would be admissible as evidence in a [separate] trial on the other set of offenses." We disagree. Although appellant's DNA was found in 2004 on cigarettes left at the residence, a jury might not find this evidence sufficient to prove that appellant was the perpetrator of that burglary. After all, the Melchers operate a funeral home and one could expect members of the general public who visited the facility to leave behind traces of their DNA. Defense counsel could have argued that cigarettes with appellant's DNA could have innocently appeared at the funeral home, either from appellant himself or through someone else, during a showing or a funeral. Under Evid.R. 404(B), the appellee could then show that appellant in 2005 perpetrated a home invasion at the same residence to dispel any claim that a *Page 10 
mourner innocently left the cigarettes at the premises in 2004.[4]
 {¶ 22} Likewise, as we discuss infra, evidence of appellant's DNA from the 2004 break-in is admissible to establish that he was one of the men present in 2005. Although Ralph Melcher and Marcia Melcher both affirmatively identified appellant as one of the men involved in 2005 home-invasion, that identification was subject to some degree of doubt. Introduction of appellant's DNA from a year earlier is relevant to show that appellant knew the Melcher Funeral Home, may have previously robbed it and might have chosen to again break-in and vandalize the facility.
 {¶ 23} Our decision is buttressed by State v. Lott (1990),51 Ohio St.3d 160, 555 N.E.2d 293 wherein the Ohio Supreme Court found no error in joining a 1983 burglary charge with a similar 1986 offense when the defendant "burgled the same house and stolen from the same victim." Id. at 164. There, as here, the same evidence could just as easily be introduced in two trials. Moreover, the underlying facts were "simple and direct" so the trier of fact would not be confused or improperly cumulate evidence. Id. Here, the underlying facts are simple and direct.
 {¶ 24} Generally, a trial court decision concerning the severance of offenses should not be reversed absent an abuse of *Page 11 
discretion. See State v. Hand, 107 Ohio St.3d 378, 840 N.E.2d 151,2006-Ohio-18, at ¶ 166; State v. McKnight, 107 Ohio St.3d 101,837 N.E.2d 315, 2005-Ohio-6046, at ¶ 170. An abuse of discretion is more than an error of law or judgment; rather, it implies that a court's attitude was unreasonable, arbitrary or unconscionable. See State v.Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; State v.Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898. Furthermore, when reviewing for an abuse of discretion, appellate courts must not simply substitute their judgment for that of the trial court.See State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181. To establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but defiance of judgment, and not the exercise of reason but instead passion or bias. Vaught v. Cleveland ClinicFound., 98 Ohio St.3d 485, 787 N.E.2d 631, 2003-Ohio-2181, ¶ 13;Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256,662 N.E.2d 1. In the case sub judice, our review reveals that the trial court committed no abuse of discretion.
 {¶ 25} Accordingly, based upon these reasons, we hereby overrule appellant's third assignment of error.
 III {¶ 26} Appellant asserts in his fourth assignment of error *Page 12 
that the trial court erred by allowing evidence concerning the German Village robberies. In particular, appellant claims that this evidence violated the Evid.R. 404(B) restriction against the admission of evidence concerning other crimes. We disagree.
 {¶ 27} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as . identity . . ." (Emphasis added.) The admissibility of other acts evidence is carefully limited because a substantial danger exists that a jury may convict solely because it assumes that a defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. This danger increases when the other acts are similar to the charged offense, or are of an inflammatory nature as is in the case here. State v. Schaim (1992), 65 Ohio St.3d 51,59, 600 N.E.2d 661. Nevertheless, evidence of other crimes may be admissible when integral to the identification of a perpetrator. SeeState v. Lott (1990), 51 Ohio St.3d 160, 169, 555 N.E.2d 293; also seeState v. Vasson, Cuyahoga App. No. 88069, 2007-Ohio-1599, at ¶ 18;State v. Kellon (Sep. 20, 2001), Cuyahoga App. No. 78668. In the case sub judice, both victims identified the Hairstons as the men in their bedroom in the early hours of September 29 . Defense counsel vigorously challenged that identification and questions about the amount of light in the residence, the assailants' clothing as *Page 13 
well as the perpetrators' initial misidentification.[5]
 {¶ 28} Under the circumstances present in the case at bar, we believe that the trial court properly allowed evidence of the Franklin County crimes to establish similarities to the Melcher robbery and to establish the perpetrators' identity. In those cases the perpetrators ordered the victims to remove their clothing, and tied the victims to chairs with articles of clothing.[6] Also, Brenda Walker of the Columbus Police Department testified that in her eighteen years of experience, it is highly unusual for victims to be stripped of their clothing and be tied to chairs with articles of their own clothing.
 {¶ 29} After we consider the similarities between the German Village robberies and the Melcher home-invasion, we agree with the trial court's conclusion to allow the other acts evidence to establish identity. This is particularly true in light of the fact that two victims (Cynthia Green and Melanie Pinkerton) identified appellant as one of the men in their homes.[7] *Page 14 
 {¶ 30} Again, the decision to admit Evid.R. 404(B) prior acts evidence rests in a trial court's sound discretion and that decision should not be reversed absent an abuse of discretion. State v. Parker, Columbiana App. No. 04CO44, 2005-Ohio-6777, at ¶ 20; State v. Hammond, Cuyahoga App. No. 85001, 2005-Ohio-1852, at ¶ 55; State v. Moore, Mahoning App. No. 02CA152, 2004-Ohio-2320, at ¶ 39. In the case sub judice, considering Officer Walker's testimony about the unique characteristics of the four robberies, we find nothing arbitrary, unreasonable or unconscionable in the trial court's decision to admit this evidence. We also commend all three defense counsel, the prosecution and the trial court for devoting to this issue very careful and thoughtful consideration.
 {¶ 31} Accordingly, based upon the foregoing reasons we hereby overrule appellant's fourth assignment of error.
 IV {¶ 32} Appellant asserts in his fifth assignment of error that the trial court erred by failing to grant a mistrial after an incident that occurred one day when the court recessed for lunch. As the jurors were leaving for lunch, two jurors observed the defendants in restraints. The Hairstons then began to yell and to make gestures to draw attention to themselves. Later, the jurors were reassured that the Hairstons were simply "trying to intimidate" them. Although the two jurors who observed the Hairstons were later dismissed from the jury, appellant argues that the remainder of the jury panel was tainted as well and the *Page 15 
trial court should have granted a mistrial. We reject appellant's argument.
 {¶ 33} As the prosecution correctly points out, a brief, inadvertent sighting of a defendant in handcuffs is not usually prejudicial. SeeState v. McKnight, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046, at ¶ 219; State v. Kidder (1987), 32 Ohio St.3d 279, 285-286,513 N.E.2d 311. Further, once this particular incident came to the trial court's attention, the judge questioned every member of the jury panel and actually excused two members. The court also instructed the remaining jurors that they must not consider any evidence from "outside" the courtroom. Curative instructions are generally presumed to remove any prejudice. McKnight, supra at ¶ 220; State v. Garner (1995),74 Ohio St.3d 49, 59, 656 N.E.2d 623.
 {¶ 34} Finally, some evidence exists to indicate that the defendants may have actually engineered the juror sighting. Bailiff Terry Minch informed the trial court that the defendants called out to the jurors to see them in their "shackles and chains." They then chanted "tainted jury, mistrial, tainted jury" so that everyone in the "mezzanine area" could hear them. Suffice it to say, defendants must not manipulate or attempt to manipulate the judicial system. If the defendants purposely brought their restraints to the attention of the jury to attempt to engineer a mistrial, they should not be rewarded for their actions.
 {¶ 35} In the end, the decision to grant a mistrial rests in a *Page 16 
trial court's discretion and should not be reversed absent an abuse of discretion. See State v. Ahmed, 103 Ohio St.3d 27, 813 N.E.2d 637,2004-Ohio-4190, at ¶ 92; State v. Brown, 100 Ohio St.3d 51,796 N.E.2d 506, 2003-Ohio-5059. Here, we do not believe that the trial court abused its discretion. To the contrary, our review reveals that the trial court went to great lengths to ensure that the jury panel was not tainted, despite the actions of appellant and his co-defendants.
 {¶ 36} Accordingly based upon these reasons, we find no merit in the third assignment of error and it is hereby overruled.
 V {¶ 37} Appellant's sixth assignment of error asserts that the trial court erred by not granting a motion for mistrial made after the court empaneled the jury, but before the actual commencement of the proceedings. At trial appellant argued that the jury pool was tainted because during voir dire, several prospective jurors made remarks that prejudiced his right to a fair trial. Those remarks allegedly included one potential juror's comments that he had heard "three black guys" committed the crimes; comments by another potential juror that the Hairstons must be "guilty" because the grand jury had indicted them; and statements by others that they had read newspaper accounts of the incident or are related or know the Melchers. One potential juror, when asked if he could put aside the newspaper account and base his decision only on facts adduced at trial, said that he would "try" to do so. Appellant claims that *Page 17 
these remarks prejudiced him with the remaining members of the jury pool. We disagree.
 {¶ 38} The decision whether to grant a mistrial lies in the trial court's discretion and will not be reversed absent an abuse of discretion. See State v. Ahmed, 103 Ohio St.3d 27, 813 N.E.2d 637,2004-Ohio-4190, at ¶ 92; State v. Brown, 100 Ohio St.3d 51,796 N.E.2d 506, 2003-Ohio-5059, at ¶ 42. An abuse of discretion is much more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See State v.Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; State v.Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898. In reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. See State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254;In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Generally, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, and not the exercise of reason but instead passion or bias. Vaught v. Cleveland Clinic Found.,98 Ohio St.3d 485, 787 N.E.2d 631, 2003-Ohio-2181, ¶ 13; Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 39} At the outset we first note that none of the potential jurors cited in appellant's brief were empaneled to sit on the *Page 18 
final jury. Therefore, the pivotal issue is whether remarks from those individuals prejudiced appellant with the remaining venire. Appellant cites nothing in the record to demonstrate that these remarks biased or prejudiced the empaneled jurors other than the fact that the remarks occurred. Generally, prejudicial effect is not presumed, but must be affirmatively shown of record. See State v. Treesh (2001),90 Ohio St.3d 460, 464, 739 N.E.2d 749; also see State v. Feagin, Richland App. No. 05CA1, 2006-Ohio-676, at ¶ 23 (party challenging a jury panel has burden of showing the jury cannot be fair and impartial). Here, appellant has made no showing of bias or prejudice.
 {¶ 40} We also are not persuaded the remarks are so egregious as to presume to prejudice. Obviously, the incident at the funeral home resulted in media coverage. However, reading a newspaper article or viewing a television report, does not necessarily require a determination that a prospective juror cannot be fair and impartial. Rather, a defendant must affirmatively establish that media coverage actually biased one or more empaneled jurors, State v. King, Lorain App. No. 04CA8577, 2005-Ohio-4259, at ¶ 45. Appellant has not satisfied that burden in this case.
 {¶ 41} Likewise, we find nothing to suggest that the entire venire was prejudiced simply because some potential jurors, who were, in fact, subsequently dismissed, knew the Melchers. Again, an affirmative showing of bias or prejudice must be established. None has been shown here. *Page 19 
 {¶ 42} Similarly, a potential juror's remark about hearing "three black guys" committed a crime does not taint the entire jury pool. This juror did not identify appellant and we do not believe that his remark caused appellant prejudice. Nor do we believe that the entire jury pool was tainted because a few potential jurors could not put aside preconceived biases and base their verdicts on the facts adduced at trial. Any jury pool may contain one or more potential jurors who have preconceived ideas about a particular defendant's guilt, and sometimes little can be done change their opinions. However, those individuals are appropriately dismissed from the venire pursuant to the established rule of criminal procedure. If, however, remaining jury pool members indicate that they can be fair and base their decision solely on the facts presented at trial, no reason exists to dismiss the entire pool.
 {¶ 43} Thus, because appellant has not established actual bias or prejudice, we find no abuse of discretion in the trial court's decision to overrule appellant's pre-trial motion for mistrial. Accordingly, we hereby overrule appellant's sixth assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court *Page 20 
directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment Opinion Harsha, J.: Concurs in Judgment Opinion as to Assignments of Error III, IV, V VI; Concurs in Judgment Only as to Assignments of Error I II
[2] Appellant admitted to involvement with the break-in at Cynthia Green's home.
[3] Appellant and the appellee both argue these issues under subsection (A)(2) of R.C. 2923.13. We parenthetically note, however, that the indictment and the judgment entry refer to subsection (A)(3) rather than (A)(2). Neither side raises this discrepancy on appeal and we disregard it for purposes of our analysis.
[4] Whether evidence of the 2005 Columbus burglaries would have been admissible in a separate trial for the 2004 offense is a more difficult question. However, because the Melchers' identification of appellant in 2005 was admissible to prove that he was at the premises for some nefarious purpose in 2004, we need not concern ourselves with the issue of the Columbus burglaries.
[5] One of the perpetrators was described as "husky" or obese and none of the Hairstons fit that description. Furthermore, the Melchers thought one or more of the perpetrators might have been Hispanic. All three defendants are African-American.
[6] Ralph Melcher testified the Hairstons used scarves to tie him up. Cynthia Green testified that her assailants used bathrobe ties and belts. Melanie Pinkerton explained that neck ties were used on her. John Maransky recalled that he was tied up with scarves and neck ties.
[7] Although Cynthia Green and Melanie Pinkerton both identified appellant as one of the men who broke into their German Village homes, their testimony also included detailing the substantial similarities to the Melcher robbery. *Page 1