[Cite as *State v. Scott*, 2015-Ohio-4170.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 15CA2 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| KENNETH P. SCOTT, | : | |
| Defendant-Appellant. | : | RELEASED 10/02/2015 |

APPEARANCES:

James S. Sweeney, James Sweeney Law, LLC, Columbus, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

Hoover, P.J.

{¶1}   Defendant-appellant, Kenneth P. Scott, appeals from his convictions for felonious assault and domestic violence entered by the Washington County Court of Common Pleas following a jury trial. Tana Senften, Scott's live-in girlfriend, claimed that Scott brutally attacked her in their shared apartment following an evening out at a gambling café. Scott denied attacking Senften and claimed that an intoxicated Senften injured herself when she tried to attack him and fell.

{¶2}   On appeal, Scott contends that his conviction was against the manifest weight of the evidence because his version of the events should be believed over Senften's. However, a conviction is not against the manifest weight of the evidence simply because the jury rejects the defendant's version of the events and instead resolves the conflicting evidence in favor of the State. Rather, the jury, as the trier of fact, was free to reject Scott's version of the events, which it

apparently did. As such, we cannot conclude that this is a case where the jury clearly lost its way or created a manifest miscarriage of justice.

{¶3}     Scott next argues that the trial court erred in denying his Crim.R. 29 motion for acquittal. He contends that the State did not prove that Senften suffered "serious physical harm", an essential element of felonious assault, because it failed to provide testimony from an expert witness regarding the nature and extent of Senften's injuries. However, expert medical testimony is not required to prove the element of "serious physical harm".  Substantial testimony from the victim regarding her injuries was also presented. Scott further argues that the motion should have been granted because Senften's version of events was contradicted by Scott's testimony and the testimony of another defense witness. Because this argument asks for a weighing of the evidence and a determination of witness credibility, it is not proper. The trial court correctly determined that a reasonable juror could conclude, beyond a reasonable doubt, that Senften suffered serious physical harm when viewing the evidence in the light most favorable to the prosecution.

{¶4}     Finally, Scott argues that the trial court erred by failing to admit other acts testimony because the proffered testimony was purportedly admissible to show motive; and because the State had opened the door to other acts evidence. We disagree. Accordingly, we affirm the judgment of the trial court.

I. FACTS

{¶5}     On May 1, 2014, Scott was indicted for one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The indictment arose from an incident that occurred on April 2, 2014, between Scott and Senften.

{¶6} A review of the record and the transcript from the jury trial held on October 8, 2014, indicates that Scott had been dating and living with Senften at the time of the events leading to Scott's indictment. On April 1, 2014, Scott and Senften visited a gambling café in Lubeck, West Virginia. After a short visit the pair returned home to their shared apartment in Belpre, Washington County, Ohio, and watched television for some time before Senften decided to go to sleep in the apartment's second bedroom (also referred to at trial as the computer room or storage room). Senften testified that she had one beer at the gambling café and one beer at the apartment. Scott testified that Senften had "a couple of beers" at the gambling café and two twenty-four ounce cans of beer at the apartment.

{¶7} Between 3:00 and 4:00 a.m. on April 2, 2014, Scott awoke from sleep and entered the second bedroom. Senften claims that Scott entered the bedroom uninvited and offered her a blanket. Scott, on the other hand, claims that he was awakened by Senften's shouts that she was "freaking freezing" and that he entered the bedroom to offer her a blanket. There is more conflicting testimony about the exchange that took place between Scott and Senften while inside of the room. Senften stated that she and Scott began to argue because he was upset that she did not go to bed with him, and that the argument moved into the dining room. Once in the dining room, Senften contends that Scott pinned her against the floor and punched her twelve to fifteen times causing her to bleed from her left eye, ears, nose, and mouth. Senften was eventually able to escape to the bathroom where she locked the door and called her son in Athens, Ohio. Her son then apparently called the police. Meanwhile, Scott testified that soon after he entered the bedroom Senften became agitated. He claims that Senften pushed him aside, then moved to the kitchen knocking items to the floor, and eventually swung a toaster at him causing an injury to his knuckle. Scott also testified that in her fit of rage Senften flipped over a table and then

tripped over the table's leg. As she fell to the floor Scott claims that Senften hit her face on the table's edge causing her to bleed profusely. Scott testified that he attempted to assist Senften, but that she refused assistance and locked herself in the bathroom.

{¶8}   At approximately 5:30 a.m., Patrolmen Adam Holiday and T.G. Heddleston of the Belpre Police Department were dispatched to the apartment. The officers separated Scott and Senften upon arriving at the apartment. Senften told Patrolman Holiday that she and Scott had gotten into an argument and that Scott punched in her in face repeatedly. Meanwhile, Scott informed Patrolman Heddleston that Senften attacked him and swung a toaster at him at which time she fell and hit the table.

{¶9}   As a result of the incident, Senften bled profusely from her face and her head. The testimony indicates that Senften lost or loosened several of her top front teeth and broke her nose during the incident. Senften's left eye was also swollen for three weeks following the incident. Senften described suffering great pain in her head, face, ear, throat, and back, necessitating the use of anti-inflammatory medication and prescription painkillers. Senften also developed a blood clot following the incident and was still taking prescription painkillers at the time of trial. Senften also indicated at trial that she continued to suffer from tenderness in her jaw and neck, headaches, toothaches, and had diminished vision in one eye. While Senften initially refused law enforcement transport to the hospital, family members eventually took Senften to Marietta Memorial Hospital for treatment.

{¶10}  Scott and Senften's next-door-neighbor, Randy McGrew, also testified at trial. McGrew testified that on the morning of the incident he was awakened by a loud commotion that sounded "pretty intense" coming from the neighboring apartment. In particular, McGrew heard a female's voice say, "You're killing me, you're killing me." He also heard what he thought to be

furniture thrown about the apartment. He described the incident as similar to "[what] you would think a bar fight might sound [like]."

{¶11} Patrolman Holiday testified at trial that Senften did not appear to be impaired when he spoke to her on the morning of the incident, but that he did detect an odor of alcohol. Patrolman Holiday also testified about the injuries he observed on Senften. Patrolman Holiday also indicated that he observed a laceration on Scott's right knuckle and a little bit of swelling and blue or purple on his right hand and knuckle.

{¶12} Patrolman Heddleston testified that Scott's knuckles appeared red and swollen. He also observed the laceration in the right knuckle area and noted that slight red marks appeared on Scott's arm and neck area. Patrolman Heddleston stated that according to Scott, Senften had been drinking that night and that she has a problem with alcohol. Nonetheless, Patrolman Heddleston testified that Scott's version of events did not "explain the amount of injuries that [Senften] had to her facial area and the swelling."

{¶13} Upon cross-examination at trial, defense counsel asked Senften if she had a charge pending in West Virginia for operating a vehicle while intoxicated ("OVI"), and if she had an alcohol problem and a history of falling and injuring herself at bars. The State objected to the line of questioning and the trial court heard argument regarding the admissibility of such evidence. Defense counsel asserted that Senften had opened the door to the line of questioning by testifying that she did not have an alcohol problem. Specifically, defense counsel stated: "Your Honor, she's testified she doesn't have an alcohol problem. She has a pending warrant for arrest for OVI. In addition, she's testified she's fallen before and hurt her face * * *." Defense counsel also stated that she intended to elicit testimony from Robert Davis that Senften had fabricated a story about how she received the injuries to law enforcement because she had a

warrant out for her arrest on the OVI charge. Ultimately, the trial court sustained the State's objection, noting that " * * * at this point, [the warrant/pending OVI charge is] only an allegation, and it's prejudicial effect and it's – it's-- doesn't go to credibility, because only a conviction can go to credibility, not an arrest." The trial court then ordered stricken from the record "any reference to pending charges" and instructed the jury to disregard the "line of testimony about [the] pending charge * * *."

{¶14} Robert Davis testified for the defense. Davis is the boyfriend of Senften's daughter. Senften had called Davis from inside of the locked bathroom and asked for his help. When Davis first arrived at the scene, Senften told him that Scott had "drug her out of the room—out of the room for no reason and proceeded to beat on her." However, he testified that at a later time she changed her story and told him that she fabricated the original story because she was worried about her warrant in Parkersburg and that she actually sustained the injuries to her face when she fell. During a voir dire examination[1] of Davis, outside the presence of the jury, Davis indicated that on prior occasions he had picked Senften up from bars and that she had sustained facial injuries at bars presumably because she had fallen while drunk. The trial court, however, did not permit Davis to testify about Senften's history of falling at bars in the presence of the jury.

{¶15} On rebuttal, the state called Patrolman Holiday to testify again. Patrolman Holiday indicated that he ran Senften's name and identification on the date of the incident and that there were no active warrants for her arrest in the system. However, on cross-examination, he stated that it was possible that the warrant was not in the system because it was out of the "pickup radius".

---

[1] The trial court conducted voir dire examination of Davis because defense counsel had not listed him as a potential witness in discovery and there was argument that he should not be permitted to testify.

{¶16}   Photographs of Senften's injuries and of Scott's hands and neck were introduced and authenticated at trial; and eight of the photographs were admitted into evidence.

{¶17}   After all the evidence and testimony had been presented, defense counsel made a Crim.R. 29 motion for acquittal, contending that there was insufficient evidence to prove the charges and that the State failed to prove the "serious physical harm" element of the felonious assault charge because it did not call a doctor to testify about Senften's injuries. After hearing argument from both parties, the trial court denied the motion. The jury then found Scott guilty of felonious assault and domestic violence, as charged in the indictment. Subsequently, a sentencing hearing was held and the trial court issued a sentencing entry on December 17, 2014, in which it determined that the two charges were allied offenses of similar import and imposed sentence upon the charge of felonious assault. Scott was then sentenced to two years imprisonment. It is from the sentencing entry that Scott now brings his timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶18}   Scott assigns the following errors for our review:

1.      THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

2.      THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL AS THE GUILTY VERDICTS AT THE TRIAL COURT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

3.      THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT EXCLUDED RELEVANT CHARACTER EVIDENCE OF THE ALLEGED VICTIM.

## III. LAW AND ANALYSIS

{¶19}   For ease of analysis, we will address Scott's assignments of error out of order.

*A. Sufficiency and Manifest Weight of the Evidence*

{¶20}  In his second assignment of error, Scott contends that the trial court erred by overruling his Crim.R. 29(A) motion for acquittal and that the verdicts are not supported by sufficient evidence. Our standard of review for both arguments is the same. *State v. Jackson,* 188 Ohio App.3d 803, 2010-Ohio-1846, 937 N.E.2d 120, ¶ 5 (4th Dist.); *State v. Hairston,* 4th Dist. Scioto No. 06CA3081, 2007-Ohio-3880, ¶ 16. Here, we must determine whether the evidence adduced at the trial, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.,* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶21}  In the case sub judice, Scott was charged with one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of domestic violence, in violation of R.C. 2919.25(A). R.C. 2903.11(A)(1) defines the offense of felonious assault and provides in pertinent part as follows: "No person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn[.]" R.C. 2919.25(A) defines the offense of domestic violence as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶22}  Here, Scott specifically contends that he should have been granted a judgment of acquittal on the felonious assault charge because "the State failed to provide any testimony from

any medical professional to establish * * * [the] serious physical harm" element of R.C. 2903.11(A)(1). We disagree with Scott.

{¶23} "Serious physical harm" is defined under R.C. 2901.01(A)(5)(c), (d), and (e) as including harm that produces "temporary, substantial incapacity", "temporary, serious disfigurement", or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." At trial, Senften testified in great detail about the injuries she sustained. Specifically, Senften testified that her left eye was swollen shut for three weeks following the incident, that she broke her nose and lost teeth as a result of the incident, and that a blood clot developed under her eye. The State corroborated Senften's injuries by introducing photographs of her injuries. Certainly these types of injury constitute "temporary, substantial incapacity" and "temporary, serious disfigurement" as those words are commonly understood. Moreover, there is no doubt that Senften experienced "prolonged or intractable pain" as a result of the incident. At trial, which took place approximately six months after the incident, Senften testified that she still experienced pain in her jaw, neck, head, and teeth necessitating the use of prescription painkillers. Courts have also determined that "serious physical harm" exists " 'where the injuries caused the victim to seek medical treatment.' " *State v. Muncy*, 4th Dist. Scioto No. 11CA3434, 2012-Ohio-4563, ¶ 23, quoting *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 11. And here, the testimony established that Senften did visit a hospital and was prescribed pain medication. Thus, we believe that sufficient evidence of "serious physical harm" supported the trial court's denial of Scott's Crim.R. 29(A) motion.

{¶24} We also hold that the State need not present expert medical testimony to establish the element of serious physical harm. We note that other courts have rejected similar arguments. *See State v. Driesbaugh*, 11th Dist. Portage No. 2002-P-0017, 2003-Ohio-3866, ¶ 46 (rejecting a

nearly identical argument and citing other appellate district courts in support of its ruling).

Moreover, Scott has failed to cite any case law in support of his proposition.

{¶25}  Scott also asserts that the trial court should have sustained his motion for acquittal

because "the statements of Ms. Senften that she was violently assaulted by Mr. Scott were

contradicted by the testimony of Mr. Scott and Mr. Davis." It is well settled that the weight of

the evidence and credibility of witnesses are issues for the jury as the trier of fact. *State v.*

*DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus; *State v.*

*Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). A jury is free to believe all, some, or none of

a particular witness's testimony. *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096

(4th Dist.1992). In the case sub judice, the jury obviously found the testimony from Senften

credible, and her testimony is sufficient to sustain the jury verdicts.

{¶26}  Based on the foregoing, we conclude that sufficient evidence was adduced to

support the trial court's denial of Scott's Crim.R. 29(A) motion, as well as the jury verdicts.

Accordingly, we overrule Scott's second assignment of error.

{¶27}  In his first assignment of error, Scott challenges the jury's guilty verdicts as being

against the manifest weight of the evidence. Specifically, he argues that the evidence presented at

trial corroborates his version of events, i.e., that Senften drunkenly attacked him and fell and hit

her head against a table. He cites McGrew's testimony that it sounded like furniture was being

thrown about the apartment. He also cites Davis's testimony that Senften admitted to sustaining

the injuries when she fell and hit her head; and that she initially lied about the assault because

she had a warrant for her arrest. Scott asserts that Davis's testimony shows that Senften believed

that if she told the officers the truth - as opposed to claiming to be a victim of a violent assault -

she would be arrested on her outstanding warrant. Thus, Scott claims that Senften had an

incentive to lie to the officers about how she sustained her injuries. Finally, Scott cites Senften's testimony elicited on cross-examination that she had fallen in the past and caused injury to her head.

{¶28}   The State argues, on the other hand, that the greater weight of the evidence supports Scott's conviction. The State notes that: (1) Senften testified undoubtedly that Scott attacked her; (2) the neighbor testified that a women's voice could be heard yelling, "You're killing me, you're killing me"; (3) the responding officers testified that Senften did not appear intoxicated, that swelling and marks were visible on Scott's hand and knuckles, and that the injuries did not appear consistent with Scott's version of events; and (4) the photographs admitted at trial depict injuries that are consistent with Senften's claims that Scott beat her with his fists.

{¶29}   " 'Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.' " *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id*. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id*., citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001), and *DeHass,* 10 Ohio St.2d at paragraph one of the syllabus, 227 N.E.2d 212.  This is so because "[t]he trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Pippen,* 4th Dist. Scioto No.

11CA3412, 2012–Ohio–4692, ¶ 31, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶30}   "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *Davis*, 2013-Ohio-1504, at ¶ 14. A reviewing court should find a conviction against the manifest weight of the evidence " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶31}   After reviewing the trial record, we are confident that the jury did not lose its way in finding Scott guilty of felonious assault and domestic violence.

{¶32}   The theme of Scott's argument under this assignment of error is that Senften's testimony was not credible or reliable, and thus should not have been believed by the jury. Rather, he contends that the jury should have believed his version of events. However, the weight to be afforded evidence and the credibility of testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). As stated above, the fact finder "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.*, 10 Ohio St.3d 77 at 80, 461 N.E.2d 1273. Here, both the State and defense counsel fully examined Senften, Scott, and all the other witnesses. Thus, the jury had before it sufficient information to

ascertain the credibility of the witnesses and to weigh their testimonies accordingly, and we will not substitute our judgment for that of the jury.

{¶33} Furthermore, other evidence corroborates Senften's version of events. The photographs admitted at trial, for example, are consistent with Senften's claims and clearly show a significant amount of blood and significant injury to Senften's face. The photographs also show Senften's swollen eye and the swelling and redness of Scott's knuckles. The neighbor's testimony about a woman's scream is also telling and bolsters Senften's version of events. We also note that the responding officers did not believe that Senften was intoxicated as Scott claimed. Moreover, Scott's claim that Senften's injuries were caused by a fall was not corroborated by any evidence except for Davis's testimony.

{¶34} Insofar as Scott contends that his conviction for felonious assault is against the manifest weight of the evidence because the State failed to produce expert medical testimony to establish the "serious physical harm" element, we note that the argument is misplaced for the reasons set forth above.

{¶35} Simply put, the jurors chose to believe Senften's version of events, which was supported by substantial evidence. This is not one of those rare cases where the jury clearly lost its way in arriving at a guilty verdict. Accordingly, we overrule Scott's first assignment of error.

*B. Admissibility of Evidence*

{¶36} In his third assignment of error, Scott contends that the trial court erred by excluding relevant and admissible testimony. First, Scott argues that the trial court erred by not allowing him to ask Senften during cross-examination if she had a pending warrant for OVI in West Virginia. Scott claims that such evidence was relevant because "it showed that [Senften] had motive, whether or not her beliefs were well-founded, to be less than truthful to officers

about what happened the night in question", and thus should have been admitted under Evid.R. 404(B) as evidence of other acts.

{¶37} "The trial court has broad discretion in the admission and exclusion of evidence, including evidence of other acts under Evid.R. 404(B)." *State v. Kirkland,* 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 67. "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris,* 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, syllabus. The Supreme Court of Ohio has "defined 'abuse of discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken.' " *Kirkland* at ¶ 67, quoting *State v. Brady,* 119 Ohio St.3d 375, 2008–Ohio–4493, 894 N.E.2d 671, ¶ 23.

{¶38} In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

{¶39} Thus, evidence may properly be admitted under Evid.R. 404(B) to establish motive. "However, where the purpose of the prior acts evidence is to establish 'the motive of a state's witness to lie, rather than the motive of the criminal defendant to commit the alleged act, it appears that the defendant is attempting to specifically impeach the witness' character for truthfulness * * * which is more appropriately accomplished through Evid.R. 607, 608, or 609.' " *Stow v. Braden*, 9th Dist. Summit No. 22703, 2005-Ohio-6455, ¶ 34, quoting *State v. Lumpkin*, 10th Dist. Franklin No. 91AP-567, 1992 WL 40555, *4 (Feb. 25, 1992). Consequently, Evid.R. 404(B) is inapplicable, and we cannot say that the trial court erred in determining that the evidence should not be admitted under Evid.R. 404(B). *Id.*

{¶40}  Furthermore, evidence of Senften's pending warrant and alleged motive to lie was ultimately admitted through Davis's testimony. Davis testified that Senften changed her story, and told him that she could not tell the truth because she was worried about her warrant in West Virginia. Davis also testified that Senften told him that she sustained her injuries to her face when she fell. Thus, evidence of the pending warrant was ultimately admitted at trial, and the trial court's refusal to allow defense counsel to elicit similar testimony from Senften on cross-examination was not prejudicial.

{¶41}  Next, Scott contends that the trial court erred by denying his counsel the opportunity to directly examine Davis about his knowledge of Senften's alleged history of getting intoxicated and falling at bars and suffering similar injuries as were present in the instant case. Scott argues that "the door was opened" for him "to provide testimony regarding prior incidents" because Senften, "during cross examination", denied having an alcohol problem.

{¶42}  "[W]here * * * a party chooses to open the door to otherwise inadmissible testimony, it is within the court's discretion to allow the other party to elicit additional clarifying testimony on the same issue." *State v. Collins*, 7th Dist. Columbiana No. 10CO10, 2011-Ohio-6365, ¶ 93. " 'Under the rule of curative admissibility, or the "opening the door" doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.' " *State v. Dunivant*, 9th Dist. Stark No. 2003CA00175, 2005-Ohio-1497, ¶ 12, quoting *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir.1988). "Rebuttal evidence, the scope of which lies within the discretion of the trial court, is that which is 'given to explain, refute, or disprove new facts introduced into evidence by the adverse party.' " *State v. Essa*, 194 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429, ¶ 97 (8th Dist.), quoting *State v.*

*McNeill*, 83 Ohio St.3d 438, 446, 700 N.E.2d 596 (1998). "The doctrine of 'opening the door' is 'dangerously prone to overuse.' " *State v. Gonzalez*, 7th Dist. Mahoning No. 06MA58, 2008-Ohio-2749, ¶ 114, quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir.1971).

{¶43}   Here, the State did not induce any testimony regarding Senften's history with alcohol or prior incidents involving Senften and alcohol consumption. Rather, it was defense counsel, upon cross-examination of Senften, who inquired whether Senften had problems with alcohol. Thus, we cannot conclude that the State "opened the door" or that the trial court abused its discretion by not allowing defense counsel to elicit testimony from Davis about Senften's prior incidents of purportedly falling and injuring herself while intoxicated.

{¶44}   For the reasons stated above, we overrule Scott's third assignment of error.

## IV. CONCLUSION

{¶45}     Having overruled all of Scott's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds that reasonable grounds exist for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, A.J.: Concur in Judgment and Opinion.

For the Court

BY: _____
         Marie Hoover
         Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**