[Cite as *Wilburn v. Ferguson*, 2021-Ohio-4256.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| MARVIN WILBURN, | : | Case No. 21CA4 |
| Petitioner-Appellee | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| CRESTA FERGUSON, ET AL., | : | |
| Respondents-Appellants. | : | **RELEASED 12/01/2021** |

_____

<u>APPEARANCES</u>:

Christopher L. Trolinger and Ronald R. Petroff, Columbus, Ohio, for appellant.

Brigham M. Anderson, Ironton, Ohio, for appellee.

_____

Hess, J.

{¶1}   Cresta Ferguson appeals from a judgment of the Lawrence County Common Pleas Court, Probate/Juvenile Division, that sustained three of her four objections and overruled one of her objections to the magistrate's decision. The trial court expanded the parenting time of the father Marvin Wilburn beyond that in Local Rule 15 and adjusted Wilburn's child support payments by 40 percent. Ferguson contends that the trial court erred in finding that expanded visitation time is in the child's best interest. She also claims that the trial court failed to make findings of fact and conclusions of law addressing factors in R.C. 3109.051(D), which constituted plain error. Ferguson contends that the trial court erred in adjusting the child support payments by 40 percent, instead of 10 percent. However, we find that Ferguson failed to request findings of fact and conclusions of law under Civ.R. 52, therefore we

presume the validity of the proceedings. We affirm the judgment to award Wilburn extended parenting time because we find that a review of the record supports it. Additionally, the trial court's decision to reduce Wilburn's child support payment was consistent with the relevant statutory factors. The trial court set forth a finding and a reason supporting the deviation, which was legitimate and did not represent an abuse of discretion. We overrule Ferguson's assignments of error and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶2}   Cresta Ferguson and Marvin Wilburn are the parents of S.P.F., born in March 2015. Ferguson is married to Scott Ferguson, but she and Wilburn were engaged in an on-again, off-again sexual relationship from early summer 2014 until approximately February 2019. During that five-year period, Ferguson continued to live with her husband, but at some point in 2017 she moved in with Wilburn for a two to three-month period. During the first two years of the child's life, Ferguson voluntarily allowed Wilburn to see S.P.F. two or three times a week and Wilburn developed a relationship with the child. In July 2016, Wilburn filed a petition for paternity but later dismissed it. He refiled a petition for paternity and for the child's name change in February 2017 after Ferguson stopped allowing Wilburn to see S.P.F. DNA results established Wilburn as the biological father of S.P.F. The court initially granted Wilburn supervised visitation with S.P.F., but later expanded it to unsupervised visitation every other weekend and one night a week. Wilburn's visitation time was extended again by two additional days on the weekends for the summer months in 2019.  Wilburn filed a proposed shared parenting plan for consideration.

{¶3}   The magistrate conducted a hearing over two days on September 27, 2019 and December 20, 2019 concerning Wilburn's proposed shared parenting plan, his request for the child's name change, and the parties' child support obligations.

{¶4}   Ferguson and Wilburn both testified concerning their discussions about their child's name. Wilburn testified that the child was not given the name he wanted for her and he sought to change the child's first and last name. Ferguson testified that she never agreed to Wilburn's suggested name; to the contrary, she mocked it.

{¶5}   Ferguson testified that she formerly worked as a nurse making approximately $22 to $23 per hour but she was diagnosed with ovarian cancer in May 2018 and stopped working. Ferguson and her husband decided she would not return to work and would stay home to care for the children. She underwent chemotherapy until December 2018, and during those seven months she continued to have a sexual relationship Wilburn.

{¶6}   During the course of their on-again, off-again relationship, Ferguson had three pregnancies with Wilburn, two that ended in miscarriages and one in the birth of S.P.F. Ferguson testified that she believed that Wilburn should have only supervised visits with S.P.F., even though he had ongoing unsupervised visitation for several years. Ferguson based her concerns in part on the fact that one of Wilburn's young children passed away by accidental drowning 16 years earlier in 2003. Ferguson also alleged that, during a visit with Wilburn that occurred a week before the hearing, S.P.F. was bruised while playing hide-and-seek with two other children when she hid in a dryer that one of the children allegedly turned on. Ferguson reported this incident to medical professionals and Lawrence County Children's Services several days after S.P.F.

returned home from the visit with Wilburn. However, at the time of the hearing, Children's Services testified that the allegations had not been substantiated and they were still investigating. Although S.P.F. had purportedly stated that she and another child had hid in the dryer from a third child, the third child denied turning the dryer on or playing hide-and-seek in the area.

{¶7}     Ferguson testified that S.P.F. had been diagnosed with severe adjustment disorder that Ferguson attributes to the child's visits with Wilburn. Ferguson did not introduce medical testimony or records of this alleged diagnosis into evidence. On cross-examination Ferguson admitted to posting a video of S.P.F. on social media with the caption, "Poor baby knows who is taking her from her family" that depicted the child stating that "Marvin won't let me stay with my daddy." Ferguson testified that she tells S.P.F. that she must go visit Marvin because the court is making her, that she has told S.P.F. nothing about the specifics of the situation or who her biological father is, and that S.P.F calls Wilburn "Marvin" and her husband Scott Ferguson "daddy" or "honey." Despite this, Ferguson contends S.P.F's confusion is exacerbated by Wilburn, not her, because Wilburn does not use S.P.F's given name. However, Wilburn testified that he uses the same abbreviated nickname that Ferguson uses for the child.

{¶8}     Ferguson testified that she experienced anxiety and depression and was prescribed at least six different medications at various times. However, she decided on her own, without consulting her physician, to stop taking her medications.  Additionally, Ferguson testified that she turned Wilburn into the IRS because "he is evading tax fraud. And I gave them specifics * * * I gave them plenty."   Wilburn earns approximately $24,000 to $28,000 per year at a pizza establishment and works as a care giver at a

behavioral center three days a week earning $11.00 per hour, plus health insurance benefits.

**{¶9}** Wilburn denied that the alleged incident involving the dryer occurred. He testified that Ferguson did not contact him about the alleged incident and that he only learned about it about four days before the hearing when he was served with civil protection order papers from the Lawrence County Sheriff's Department. Wilburn testified that the civil protection order case was dismissed that day – the day of the hearing. Wilburn and Ferguson ceased all communications when their relationship permanently ended in February 2019 and communicated only via My Family Wizard. Wilburn sought shared parenting because he believed it would be in S.P.F's best interest. He testified that S.P.F. has a good, bonded relationship with him and she loves being with him and other members of their family. Wilburn also testified that he had three other children with his ex-wife and has a positive parenting relationship with her and has always been able to co-parent with his ex-wife without issues.

**{¶10}** Sara Lockard testified that she currently resides with Wilburn and she has two children, ages four and ten, who also reside with him. Lockard has witnessed Wilburn's positive interactions with her own children and with S.P.F.; S.P.F. enjoys visiting Wilburn, is comfortable in the home, and does not want the visit to end. Lockard testified that she does not have concerns about leaving her two children in Wilburn's care. Lockard was also served with a civil protective order concerning the alleged dryer incident. Lockard denied that the incident ever occurred and testified that her children were there at the time and did not report any such incident occurring.

{¶11} Misty Adkins, Scott Ferguson's sister and Cresta Ferguson's sister-in-law, testified she had been involved in picking up S.P.F. after visitations with Wilburn. She alleged that Wilburn bruised her arm with his car door and nearly ran over her feet with his vehicle when she came to pick up S.P.F. after a visitation. Adkins stated that she drove to the parking lot where the exchange of S.P.F. was to occur. After tracking Wilburn's vehicle back and forth in the parking lot three times, she got out and opened the side door to get S.P.F. and Wilburn sped off, catching Adkins's arm with the door. (Tr. 182) Wilburn testified that nobody had contacted him to inform him that Adkins would be there to pick up S.P.F. He contended that Adkins appeared at the vehicle without acknowledging or addressing him and opened S.P.F.'s car door.

{¶12} The magistrate found that the DNA test proved Wilburn was the biological father of S.P.F. and her birth certificate should be changed to reflect Wilburn as the father. However, it was in the best interest of the child not to change her name. The magistrate found that shared parenting was in the best interest of the child and that both Wilburn and Ferguson should be designated residential parent while the child is in their physical custody and Ferguson should be named residential parent for school purposes. The magistrate found Ferguson to be voluntarily underemployed with two other minor children and Wilburn to be employed, also with two other minor children. The parties were ordered to follow a two-week alternating parenting schedule during the school year and alternate weeks during the summer, follow Local Rule 15 for holidays, and have one week per year vacation with the child. Wilburn was ordered to pay child support in the total sum of $95.69 per month, a deviation from the standard obligation by 40 percent because he was to have approximately 40 percent of the parenting time.

**{¶13}** Ferguson filed objections to the magistrate's decision. She argued that there was an error in the child support calculation that attributed Wilburn with two other minor children in his home, when the testimony was that he had only one other minor child. Ferguson also objected to the magistrate's decision to provide for shared parenting because she contended that S.P.F. had serious emotional attachment issues which would make shared parenting not in the child's best interest. She also objected to the magistrate's decision to provide for parenting time beyond that established by Local Rule 15. Wilburn objected to the magistrate's decision not to change S.P.F's last name to Wilburn.

**{¶14}** The trial court overruled Wilburn's sole objection concerning the name change, finding it was in the child's best interest to keep her current name. The trial court sustained all but one of Ferguson's objections.[1] It granted her objection concerning the number of Wilburn's minor children, finding that Wilburn had only one other minor child for purposes of the child support calculation. The trial court also sustained Ferguson's objection to shared parenting. The court stated that after "a thorough and independent review of the record," in reviewing the factors for shared parenting and best interest of the child under R.C. 3109.04(F)(1) and (2), shared parenting was not appropriate:

> [T]he Court cannot find that these parents have the ability to cooperate and make decisions jointly, with respect to the child, nor the ability to encourage the sharing of love, affection, and contact between the child and the other parent. Therefore, the Court finds the Respondent's objection to the recommendation of shared parenting well taken.

---

[1] One objection concerned a misnomer, which the trial court deemed moot by the magistrate's prior correction of it; it has no relevance to the appeal.

However, as to Ferguson's objection concerning the expanded parenting time beyond that provided in Local Rule 15, the trial court found that expanded parenting time was in the child's best interest:

> The Magistrate recommended the Petitioner receive parenting time in excess of the Court's Local Rule 15. The Court gives deference to the Magistrate's observation of the demeanor of the parties and witnesses. The Court's Local Rule states "Visitation is recognized as an extremely important time for children to engage in activities and strengthen familial bonds with the parent with whom they do not live. Liberal visitation arrangements beyond the minimum set forth herein are strongly encouraged as children face significant challenges in coping with the parents' adult difficulties." Based upon independent review of the transcript and proceedings herein, the Court finds the Respondent unlikely to encourage any additional parent time or contact between the child and the Petitioner. * * * Based upon the testimony in the transcript, the child may have anxiety or attachment issues and would benefit from a schedule that is consistent, frequent, and regular. The Court therefore finds that parenting time in addition to the Local Rule is appropriate and in the child's best interest.

{¶15} Ferguson was named residential parent and Wilburn was named the non-residential parent. During the school year, Wilburn was provided parenting time following a two-week alternating schedule as follows: (a) Week 1 – Wednesday, 6 p.m. to Sunday, 6 p.m. and (b) Week 2 – Wednesday, 6 p.m. to Friday, 6 p.m. During summer the parents alternated weeks beginning on Sunday, 6 p.m. Because Wilburn was spending approximately 40 percent of his time with the child and the parties were splitting extra expenses, the trial court ordered that child support and cash medical support shall be deviated by 40 percent, with Wilburn paying a monthly total of $92.12.

{¶16} Ferguson appealed.

## II. ASSIGNMENTS OF ERROR

{¶17} Ferguson presents the following assignments of error:

1.     The trial court erred and abused its discretion by failing to review, apply, or make any findings or conclusions indicating that the provisions of R.C. 3109.12 and R.C. 3109.051(D) were considered in determining the father's parenting time with the minor child.

2.     The trial court's failure to make any findings or conclusions indicating that it considered R.C. 3109.051(D) constitutes plain error.

3.     The trial court erred and abused its discretion in finding that the visitation schedule ordered is in the child's best interest as such is against the manifest weight of the evidence and the statutory factors contained in R.C. 3109.051(D).

4.     The trial court erred by failing to apply the adjustment contained in R.C. 3119.051 prior to the blanket 40% deviation in child support and such is an abuse of discretion and constitutes plain error.

5.     Because the trial court failed to apply the statutory adjustment, the trial court erred and abused its discretion by deviating the appellee's child support by 40%.

## III.  STANDARD OF REVIEW

{¶18} Appellate courts generally review "the propriety of a trial court's determination in a domestic relations case" under the "abuse of discretion" standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989) (abuse of discretion standard applies to child support, custody, visitation, spousal support, and division of marital property). Under the abuse of discretion standard of review, a reviewing court must affirm the decision of the trial court unless it is unreasonable, arbitrary, or unconscionable.  *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 140 (1983). " '[A]buse of discretion' [is] * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "Indeed, to show an abuse of discretion, the result must be so

palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *White v. White*, 4th Dist. Gallia No. 03CA11, 2003-Ohio-6316, ¶ 25, citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Under this highly deferential standard of review, appellate courts may not freely substitute their judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). The application of this standard in custody and support cases is warranted because trial courts have wide latitude in considering the evidence, and assessing the parties' demeanor, attitude, and credibility. *See Massie v. Simmons*, 4th Dist. Scioto No. 14CA3630, 2014-Ohio-5835, ¶ 18, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

## IV. LEGAL ANALYSIS

### A. Visitation

**{¶19}** In her first three assignments of error, Ferguson challenges the trial court's award of visitation time to Wilburn greater than the time set forth in Local Rule 15. She argues that the trial court failed to make findings of fact and conclusions of law indicating that it considered the statutory factors in its evaluation of the best interest of the child. She contends that this failure constituted plain error and the visitation schedule was against the manifest weight of the evidence.

**{¶20}** Ferguson's failure to request findings of fact and conclusions of law limits our review in this case. "When questions of fact are tried by a court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * * in which case, the court shall state in writing the conclusions of

fact found separately from the conclusions of law." Civ.R. 52. The purpose of Civ.R. 52 findings of fact and conclusions of law is " 'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.' " *See Harper v. Neal,* 4th Dist. Hocking No. 15CA25, 2016-Ohio-7179, ¶ 18, quoting *In re Adoption of Gibson,* 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986). In the absence of findings of fact and conclusions of law, we presume that the trial court applied the law correctly and will affirm its judgment if evidence in the record supports it. *Harper* at ¶ 19; *Bugg v. Fancher,* 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10. As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d 929 (5th Dist.1988):

> [W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence. The message should be clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

**{¶21}** Ferguson's failure to request findings of fact and conclusions of law means that we presume the court correctly applied the law and will affirm the trial court's judgment so long as some evidence supports it. *See Martindale v. Martindale*, 2017-Ohio-9266, 102 N.E.3d 19, ¶ 22-26 (4th Dist.).

**{¶22}** After our review of the record in its entirety, we believe that the record contains some competent, credible evidence, if believed, to support the trial court's judgment.

**{¶23}** R.C. 3109.051(D) provides:

In determining whether to grant parenting time to a parent * * * the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;

whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶24}** Our review of these factors and the evidence presented at the hearing supports the trial court's determination that it was in the child's best interest to grant Wilburn additional parenting time. Wilburn testified that S.P.F. had a bonded relationship with him and enjoyed her visitations with him and his extended family

members. Wilburn had successfully been granted additional parenting time during the duration of the proceedings. With the exception of the alleged dryer incident, which the magistrate, who evaluated witnesses' demeanors, was "not convinced that said event occurred," Wilburn's visitation time with S.P.F. was positive and occurred without any adverse harmful incidents. The parties live within close vicinity, making increased visitation with Wilburn convenient and undisruptive. Wilburn testified about his work schedule; his time off from work matches up with the additional visitation time awarded to him so that he can readily accommodate spending additional time with S.P.F. Additionally, the trial court specifically considered each parent's willingness to facilitate the other's parenting time as described in R.C. 3109.051(D)(10) and found that Ferguson was "unlikely to encourage any additional parenting time or contact between the child and [Wilburn]." Ferguson's testimony concerning the social media posting of a video of S.P.F. and her explanation to S.P.F. concerning court-coerced visitation supports the trial court's finding in this regard. Consequently, we find that the trial court's award of additional parenting time beyond Loc.R. 15 is supported by the record and is not against the manifest weight of the evidence.

**{¶25}** We overrule Ferguson's first, second, and third assignments of error.

### B. Child Support

**{¶26}** In her fourth and fifth assignments of error Ferguson contends that the trial court erred in adjusting Wilburn's child support payments by 40 percent based upon his increased parenting time. She argues that R.C. 3119.051(A) required the trial court to reduce child support by only 10 percent and it abused its discretion when it deviated by 40 percent. As previously discussed, we review child support matters under an abuse-

of-discretion standard. *Cummin v. Cummin*, 2015-Ohio-5482, 55 N.E.3d 467, ¶ 10 (4th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989); *Johnson v. Johnson,* 4th Dist. Ross No. 04CA2770, 2004-Ohio-5749, ¶ 6-9.

**{¶27}** R.C. 3119.051(A) provides:

(A) Except as otherwise provided in this section, a court or child support enforcement agency calculating the amount to be paid under a child support order shall reduce by ten per cent the amount of the annual individual support obligation for the parent or parents when a court has issued or is issuing a court-ordered parenting time order that equals or exceeds ninety overnights per year. *This reduction may be in addition to the other deviations and reductions.* (Emphasis added.)

The statutory language specifically states that the 10 percent reduction may be in addition to other deviations and reductions. *See also* R.C. 3119.22, R.C. 3119.23, R.C. 3119.231(A) (which allow for additional deviations based upon a number of different considerations). R.C. 3119.22 permits a court to deviate from the worksheet-calculated amount "if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child."

**{¶28}** Here the trial court found, "Due to the fact the father will be spending approximately 40% of the time with the child and due to the split of extra expenses detailed herein, child support and cash medical support shall be deviated by 40%." Thus, the trial court considered the extra amount of time spent and the manner in which extra expenses would be split in considering a reduction by 40 percent. We find that the trial court did not abuse its discretion in reducing the child support payment by 40

percent because it determined that Wilburn was entitled to a deviation based upon his increased parenting time and the manner in which other expenses were to be split. Thus, the trial court set forth a finding and a reason supporting a deviation. Furthermore, this is a legitimate reason and does not represent an unreasonable, arbitrary or unconscionable decision in light of R.C. 3119.23(M) which directs the court to consider a parent's obligation "for the support of others." Thus, the court did not abuse its discretion by granting Wilburn a 40 percent deviation.

{¶29} We overrule Ferguson's fourth and fifth assignments of error.

V.  CONCLUSION

{¶30} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Probate/Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
     Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**